SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Brian Delaney v. Trent S. Dickey (A-30-19) (083440)**

**Argued September 15, 2020 -- Decided December 21, 2020**

**ALBIN, J., writing for the Court.**

In this appeal, the Court considers whether the arbitration provision in the retainer agreement plaintiff Brian Delaney signed when he engaged the representation of Sills Cummis & Gross P.C. is enforceable in light of the fiduciary responsibility that lawyers owe their clients and the professional obligations imposed on attorneys by the Rules of Professional Conduct (RPCs).

On September 16, 2015, Delaney, a sophisticated businessman, retained Sills to represent him in a lawsuit. He met with a Sills attorney who presented him with a four-page retainer agreement. It was understood that Trent Dickey, who was not in the office that day, was slated to be the attorney primarily responsible for representing Delaney. During the meeting, the Sills attorney told Delaney that he should take his time reviewing the retainer agreement and ask any questions he had about its contents.

The third page of the retainer agreement contained an arbitration provision stating that any dispute about the firm's legal services or fees would be determined by arbitration and that, by agreeing to arbitration, Delaney waived his right to trial by jury; the agreement also advised Delaney that the arbitral result would be final and non-appealable. The fourth page of the retainer agreement indicated that the arbitration proceeding would be conducted through a private arbitration and mediation organization called JAMS and contained a hyperlink to thirty-three pages of JAMS rules governing the arbitral forum. The Sills attorney did not provide Delaney with a hard copy of the thirty-three pages of JAMS rules, offer an explanation of the arbitration provisions in the agreement or the hyperlink, or advise Delaney of the advantages and disadvantages of an arbitral forum in the event of a future fee dispute with or legal malpractice action against the Sills firm. Delaney reviewed and signed the retainer agreement in the presence of the Sills attorney without asking any questions.

After the representation was terminated, a fee dispute arose and, in August 2016, Sills invoked the JAMS arbitration provision in the retainer agreement. While the arbitration was ongoing, Delaney filed a legal malpractice action against Dickey and the Sills firm. The complaint alleged that Dickey and Sills negligently represented him. The

1

complaint also alleged that the mandatory arbitration provision in the retainer agreement violated the Rules of Professional Conduct and wrongly deprived him of his constitutional right to have a jury decide his legal malpractice action.

The court held that the retainer agreement's arbitration provision was valid and enforceable. The court specifically found that the provision's language -- "any dispute with respect to the Firm's legal services and/or payment by you of amounts to the Firm" will be submitted to arbitration -- was sufficiently broad to encompass a claim of legal malpractice. Additionally, the court determined that Delaney waived his right to trial by jury by agreeing to the unambiguously stated arbitration provision, citing Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014), and further observed that a law firm has no obligation to explain to a client the terms of a clearly written retainer agreement that "can be understood by a layperson." Finally, the court noted that Delaney had sufficient time to consider the import of the retainer agreement.

The Appellate Division disagreed, stressing that Sills should have provided the thirty-three pages of JAMS arbitration rules incorporated into the agreement, that Sills did not explain the costs associated with arbitration, and that the retainer included a fee-shifting provision not permissible under New Jersey law.

The Court granted defendants' petition for certification. 240 N.J. 194 (2019).

**HELD:** For an arbitration provision in a retainer agreement to be enforceable, an attorney must generally explain to a client the benefits and disadvantages of arbitrating a prospective dispute between the attorney and client. Such an explanation is necessary because, to make an informed decision, the client must have a basic understanding of the fundamental differences between an arbitral forum and a judicial forum in resolving a future fee dispute or malpractice action. See RPC 1.4(c). That information can be conveyed in an oral dialogue or in writing, or by both, depending on how the attorney chooses best to communicate it. The Court refers the issues raised in this opinion to the Advisory Committee on Professional Ethics, which may propose further guidance on the scope of an attorney's disclosure requirements. The new mandate will apply prospectively, except as to Delaney, who must be allowed to proceed with his malpractice action in the Law Division.

1. Unlike the vendor in a typical commercial transaction, a lawyer serves in a fiduciary role to a client or prospective client. All fiduciaries are held to a duty of fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others. Above all else, a lawyer's fiduciary role requires that the lawyer act fairly in all dealings with the client and provide the client with not only complete and undivided loyalty, but also with advice that will protect the client's interests. Lawyers typically prepare retainer agreements, and clients rely on the integrity of their lawyers who fashion the agreements. The attorney bears the burden of

establishing the fairness and reasonableness of the transaction given the special considerations inherent in the attorney-client relationship. One of the paramount duties of a lawyer is to make necessary disclosures to the client so that the client can make informed decisions. That duty is expressed in RPC 1.4(c), which states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." (pp. 23-24)

2. The American Bar Association (ABA) has issued a formal opinion construing the model rule on which RPC 1.4(c) is patterned. The ABA found that a provision in a retainer agreement requiring "the binding arbitration of disputes concerning fees and malpractice claims" did not violate the ABA Model Rules of Professional Conduct, "provided that the client has been fully apprised of the advantages and disadvantages of arbitration and has given her informed consent to the inclusion of the arbitration provision in the retainer agreement." Additionally, the ABA opinion recognized that a mandatory arbitration provision in a retainer agreement that insulates the lawyer from liability which she otherwise would be exposed under common or statutory law would contravene ABA Model Rule of Professional Conduct 1.8(h), which is substantially similar to New Jersey's RPC 1.8(h). Professional ethics committees and courts in other jurisdictions have reached conclusions similar to those in the ABA opinion. (pp. 25-32)

3. Noting that the advisory ethics opinions and judicial opinions from other jurisdictions require attorneys, at the very least, to explain the advantages and disadvantages of arbitrating a future fee dispute or malpractice action in light of the substantial differences between adjudicating a dispute in a judicial and arbitral forum, the Court reviews some of the differences between the arbitral JAMS forum in this case and a judicial forum. The Court makes no value judgment whether a judicial or arbitral forum is superior in resolving a legal malpractice action, which is a determination to be made by the lawyer and client, after the lawyer explains to the client the differences between the two forums so the client can make an informed decision. (pp. 32-36)

4. The arbitration provision at issue in this case -- on its face -- would be enforceable if the Sills retainer agreement were a typical contract between a commercial vendor and a customer. See Atalese, 219 N.J. at 444-45. But a retainer agreement is not an ordinary contract -- it must conform not only to the legal principles governing contracts, but also to the ethical obligations imposed on attorneys by the RPCs. Requiring attorneys to explain to a client the advantages and disadvantages of arbitration so that the client can make an informed decision whether to arbitrate a future fee dispute or legal malpractice claim against the firm does not single out a retainer agreement's arbitration provision for disparate treatment and therefore does not run afoul of the Federal Arbitration Act or the New Jersey Arbitration Act. (pp. 36-39)

5. The client comes to a lawyer for assistance in addressing a particular issue and is not likely anticipating a day when he may have to do battle with the lawyer, who is retained

3

to promote his interests and protect his rights.  Yet, the insertion of an arbitration provision in a retainer agreement indicates that the attorney has given thought to the prospect that the client may be a future adversary and has selected the forum in which potential disputes, whether about the attorney's fees or services, will be resolved.  Not even a shadow of a conflict of interest should be cast over the attorney-client relationship at its inception.  To dispel that shadow, lawyers should make the necessary disclosures in a disinterested manner to allow clients to make an informed decision, as required by the RPCs.  Consistent with the ABA opinion, the weight of authority as expressed in professional advisory opinions and judicial case law in other jurisdictions, and this Court's interpretation of its own RPCs, the Court holds that attorneys who insert provisions in their retainer agreements to arbitrate future fee disputes or legal malpractice claims must explain the advantages and disadvantages of the arbitral and judicial forums.  Attorneys can fulfill that requirement in writing or orally -- or by both means.  The Court provides examples of information that may be disclosed.  (pp. 39-43)

6.  The Court sets forth in this opinion the rudimentary requirements expected of attorneys who include a provision in a retainer agreement that mandates the arbitration of a future fee dispute or malpractice action.  Noting that the issues raised here would benefit from further study and discussion, the Court refers those issues to the Advisory Committee on Professional Ethics.  (pp. 43-44)

7.  Although the Court's opinion does not break with established precedent, the retroactive application of its ruling may not have been reasonably anticipated and would disturb the settled expectations of many lawyers throughout New Jersey, who genuinely believed that an arbitration provision that met the standards of such cases as Atalese would satisfy the requirements of the RPCs.  Therefore, the Court's holding will apply prospectively from the day of the issuance of this opinion, except as to Delaney, in keeping with the general practice whereby the plaintiff receives the benefit of the rule established in the opinion.  Here, because Delaney was not given an explanation of the advantages or disadvantages of arbitration, the present malpractice action is not subject to the arbitration provision of the Sills retainer agreement.  Delaney therefore must be allowed to proceed with this malpractice action in the Law Division.  The Court stresses that it makes no finding that Sills or its attorneys violated the Rules of Professional Conduct, and it accepts their representations that they acted good faith.  (pp. 44-47)

**The judgment of the Appellate Division is AFFIRMED AS MODIFIED.  The matter is remanded to the Law Division.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.**

4

SUPREME COURT OF NEW JERSEY

A-30 September Term 2019

083440

Brian Delaney,

Plaintiff-Respondent,

v.

Trent S. Dickey and Sills Cummis & Gross, P.C.,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| September 15, 2020 | December 21, 2020 |

Peter G. Verniero argued the cause for appellants (Sills Cummis & Gross, attorneys; Peter G. Verniero, Richard H. Epstein, and Joshua N. Howley, of counsel and on the briefs).

Glenn A. Bergenfield argued the cause for respondent (Glenn A. Bergenfield, on the briefs).

William E. Denver argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Kimberly A. Yonta, President, of counsel, and Andrea J. Sullivan and Kersten Kortbawi, on the brief).

Michael S. Stein argued the cause for amicus curiae Bergen County Bar Association (Pashman Stein Walder

Hayden, attorneys; Michael S. Stein and Janie Byalik, on the brief).

Michael J. Epstein argued the cause for amicus curiae New Jersey Association for Justice (The Epstein Law Firm, attorneys; Michael J. Epstein, of counsel and on the brief, and Michael A. Rabasca, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

An attorney serves in a fiduciary role with a client at the very inception of the attorney-client relationship. In that fiduciary role, an attorney has a professional obligation to explain the content of a retainer agreement "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 1.4(c). Thus, a retainer agreement is not an ordinary contract governed by the rules of the marketplace but is a contract that must meet the high standards of the Rules of Professional Conduct (or RPCs). An attorney's professional and fiduciary obligations require scrupulous fairness and transparency in dealing with clients -- requirements different from the typical norms that regulate arm's-length commercial transactions between vendors and customers.

Through the lens of those basic principles, we view the issue before us: whether a lawyer has a duty to explain the benefits and disadvantages of a

2

provision in a retainer agreement that binds the client to arbitrate a future fee

dispute or legal malpractice action in a non-judicial forum.

In this case, plaintiff Brian Delaney, a sophisticated businessman, sought

the representation of Sills Cummis & Gross P.C. (Sills), a prominent law firm,

in an ongoing commercial lawsuit with his estranged business partners.

At the Sills office, an attorney handed Delaney a four-page retainer

agreement, including a one-page attachment (fourth page). The retainer

agreement stated that any dispute about the firm's legal services or fees would

be determined by arbitration and that, by agreeing to arbitration, Delaney

waived his right to trial by jury. The agreement also advised Delaney that the

arbitral result would be final and non-appealable. The one-page attachment

indicated that the arbitration proceeding would remain confidential and would

be conducted through a private arbitration and mediation organization called

JAMS pursuant to its rules and procedures. The attachment, moreover,

contained a hyperlink to thirty-three pages of JAMS rules governing the

arbitral forum.[1] On the day Delaney reviewed and signed the retainer

agreement, the Sills attorney did not provide a hard copy of the JAMS rules,

---

[1] The thirty-three pages of JAMS rules include the cover page and table of contents.

3

although he offered to answer any questions Delaney might have about the agreement.

Delaney later terminated his relationship with Sills. When Delaney refused to pay the outstanding fees allegedly owed to Sills, the firm invoked the arbitration provision. Delaney later sued Sills for professional malpractice and moved before the Chancery Division to stay the fee dispute that was already in arbitration, pending the outcome of the malpractice action. The Chancery Division ruled that the fee dispute and the malpractice claim were subject to the retainer agreement's arbitration provision.

The Appellate Division reversed. It found that Sills's failure to provide Delaney with the thirty-three pages of JAMS rules referenced in the retainer agreement before Delaney signed the agreement or to explain to him the JAMS rules, "some of which were material to the arbitration clause and the client's decision to retain Sills," rendered the arbitration provision unenforceable under the Rules of Professional Conduct.

We now hold that, for an arbitration provision in a retainer agreement to be enforceable, an attorney must generally explain to a client the benefits and disadvantages of arbitrating a prospective dispute between the attorney and client. Such an explanation is necessary because, to make an informed decision, the client must have a basic understanding of the fundamental

4

differences between an arbitral forum and a judicial forum in resolving a future fee dispute or malpractice action.  See RPC 1.4(c).

An arbitration provision in a retainer agreement is an acknowledgement that the lawyer and client may be future adversaries.  That the retainer agreement envisions a potential future adverse relationship between the attorney and client -- and seeks to control the dispute-resolution forum and its procedures -- raises the specter of conflicting interests.  An arbitral forum and judicial forum, and their accompanying procedures, are significantly different.

We do not make any value judgment about whether an arbitral or a judicial forum would be more beneficial to a client if the client and attorney part as adversaries.  We conclude, however, that an attorney's fiduciary obligation mandates the disclosure of the essential pros and cons of the arbitration provision so that the client can make an informed decision whether arbitration is to the client's advantage.  See RPC 1.4(c).  That obligation is in keeping with an attorney's basic responsibility to explain provisions of a retainer agreement that may not be clear on their face.  Accordingly, the disclosures required of an attorney in explaining an arbitration provision in a retainer agreement stand on an equal footing with the disclosures required in explaining other material provisions in the agreement.  Such comparable

5

treatment does not offend the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, or the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36.

The arbitration provision in this case satisfies the requirements for a typical consumer or commercial agreement. The heightened professional and fiduciary responsibilities of an attorney, however, demand more -- an explanation of the differences between an arbitral and judicial forum. That explanation may include, for example, that in arbitration the client will not have a trial before a jury in a courtroom open to the public; the outcome of the arbitration will not be appealable and will remain confidential; the client may be responsible, in part, for the costs of the arbitration proceedings, including payments to the arbitrator; and the discovery available in arbitration may be more limited than in a judicial forum.[2]

That information can be conveyed in an oral dialogue or in writing, or by both, depending on how the attorney chooses best to communicate it. We refer the issues raised in this opinion to the Advisory Committee on Professional Ethics for its review. The Committee may make recommendations to this Court and propose further guidance on the scope of an attorney's disclosure requirements.

---

[2] The nature of the disclosure requirements will depend on the particular rules of the arbitral forum chosen by the attorney.

Because the professional obligation we now impose may not have been reasonably anticipated and would unsettle expectations among lawyers, we apply this new mandate prospectively, with one exception. Applying the holding of our opinion here is "consistent with the usual rule that the prevailing party who brings a claim that advances the common law should receive the benefit of his efforts." See Estate of Narleski v. Gomes, 244 N.J. 199, 204 (2020). To be clear, however, we do not find that Sills or its attorneys violated the Rules of Professional Conduct, and we accept their representations that they acted in good faith.

Therefore, Delaney must be allowed to proceed with his malpractice action in the Law Division. We affirm and modify the judgment of the Appellate Division and remand to the Law Division for proceedings consistent with this opinion.

## I.

## A.

This appeal comes before us on facts essentially undisputed in the parties' pleadings.

In November 2014, Delaney filed a lawsuit in Morris County against his business partners in two limited liability companies involved in real estate development. In January 2015, one of those business partners filed a lawsuit

7

against Delaney in Sussex County. The law firm of Trenk DiPasquale represented Delaney in both actions.

On September 16, 2015, Delaney retained Sills to represent him in the Morris County lawsuit, replacing Trenk DiPasquale. That day, Delaney met with a Sills attorney who presented him with a four-page retainer agreement. It was understood that Trent Dickey, who was not in the office that day, was slated to be the attorney primarily responsible for representing Delaney. The Sills attorney signed Dickey's name to the agreement and affixed his own initials below the signature. During the meeting, the Sills attorney told Delaney that he should take his time reviewing the retainer agreement and ask any questions he had about its contents.

The third page of the retainer agreement contained the following arbitration provision:

> [I]n the event that we and you are unable to come to amicable resolution with respect to any dispute (including, without limitation, any dispute with respect to the Firm's legal services and/or payment by you of amounts to the Firm), we and you agree that such dispute will be submitted to and finally determined by Arbitration in accordance with the provisions set forth on attachment 1 to this retainer letter. In such case, you would need to engage separate counsel to represent your interests and you would incur additional expense in connection with such arbitration. The decision of the Arbitrator will be final and binding and neither the Firm nor you will have the right to appeal such decision, whether in a court or in another arbitration proceeding.

8

You understand that, by agreeing to arbitrate disputes as provided in this retainer letter, you are waiving any and all statutory and other rights that you may have to a trial by jury in connection with any such dispute, claim or controversy. Notwithstanding the provisions of this paragraph and Attachment 1, the Company will retain the Company's absolute right to proceed under the Fee Arbitration Rules set forth in New Jersey Court Rule 1:20A, which will take precedence.

A one-page attachment entitled "Attachment 1 to Engagement Letter - Arbitration Provisions" -- the fourth page of the agreement -- gave a general description of some of the arbitration rules and provided a hyperlink to thirty-three pages of JAMS rules governing any dispute between the law firm and the client. The attachment stated:

Any disputes arising out of or relating to this engagement agreement or the Firm's engagement by you will be conducted pursuant to the JAMS/Endispute Arbitration Rules and Procedures (the "JAMS Rules") then in effect (see http://www.jamsadr.com), except that, notwithstanding those rules, the following provisions will apply to the arbitration:

Panel. The arbitration will be conducted by one impartial arbitrator (who may be a former judge, practicing attorney or person who is not an attorney), selected by mutual agreement or, if we and the Company cannot agree, the arbitrator will be selected in accordance with the JAMS Rules.

Process. The arbitrator will not award punitive damages to either party, and we and the Company will each be deemed to have waived any right to such damages. The arbitrator will, in rendering his or her decision, apply the substantive law of the State of New

Jersey (excluding its choice of law rules that would require the application of the laws of another jurisdiction). The place of arbitration will be Newark, New Jersey. The award of the arbitrator will include a written explanation of his or her decision and specify the basis for any damages. The written decision of the arbitrator will be final, binding and non-appealable and may be enforced in any court of competent jurisdiction. The Firm and You will pay an equal share of all costs and expenses related to compensation of the arbitrator, the site and any administrative fees, except that the award rendered by the arbitrator may include the costs and expenses of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses.

Confidentiality. The arbitration proceeding will be confidential. The existence of any matter submitted to arbitration, and the award, will be kept in confidence by you, the Firm and the arbitrator, except as required in connection with the enforcement of such award or as otherwise required by applicable law.

The Sills attorney did not provide Delaney with a hard copy of the thirty-three pages of JAMS rules, offer an explanation of the arbitration provisions in the agreement or the hyperlink, or advise Delaney of the advantages and disadvantages of an arbitral forum in the event of a future fee dispute with or legal malpractice action against the Sills firm. Delaney reviewed and signed the retainer agreement in the presence of the Sills attorney without asking any questions.

In an October 7, 2015 supplemental retainer letter forwarded to Delaney, Dickey confirmed that Sills would substitute as counsel for Trenk DiPasquale

10

in the Sussex County lawsuit.  The supplemental letter -- signed by Delaney and returned to Sills the next day -- advised that an additional retainer was required and that the firm's "fees will likely exceed $300,000 up to trial, and could be substantially higher."  That letter made no reference to arbitration.

At some point, Dickey and Delaney agreed that Sills would withdraw from the Sussex County lawsuit, allowing another attorney, who agreed to cap Delaney's fees, to substitute as counsel.  In April 2016, Delaney allegedly agreed to accept a financial settlement in the Morris County litigation subject to the parties' agreement to negotiate additional terms.  After a final agreement was purportedly reached, Delaney terminated his relationship with Sills on July 21, 2016.  At the time, Delaney refused to pay the almost $440,000 in legal fees that Sills asserted it was owed.[3]

By letter dated July 25, 2016, Sills forwarded a pre-action notice to Delaney advising him of his right to elect fee arbitration with the Essex County Fee Arbitration Committee under the New Jersey Court Rules.[4] Delaney did not avail himself of that right.

_____

[3]  According to Delaney, the Sills firm billed him nearly $1,000,000 in legal fees.

[4]  Rule 1:20A-6 provides that "[n]o lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre-action Notice to a client," advising the client of the right to seek fee arbitration under the New Jersey

11

On August 29, 2016, Sills invoked the JAMS arbitration provision in the retainer agreement. The parties postponed the arbitration as they attempted to resolve the fee dispute through mediation. After mediation failed, on April 6, 2017, Sills restarted the arbitration process, and the parties selected an arbitrator. In the ensuing months, the parties skirmished over discovery and procedural matters.

On August 31, 2017, Delaney filed a legal malpractice action against Dickey and the Sills firm in the Superior Court, Law Division, Essex County.[5] The complaint alleged that Dickey and Sills negligently represented him. The complaint also alleged that the mandatory arbitration provision in the retainer agreement violated the Rules of Professional Conduct and wrongly deprived him of his constitutional right to have a jury decide his legal malpractice action. Afterwards, the arbitrator stated that arbitration, scheduled for October 10-12, 2017, would not be postponed on account of the filing of the malpractice case.

Court Rules. In the scenario before us, under our Court Rules, Delaney, not Sills, could request arbitration of a fee dispute before a court-appointed fee arbitration committee. See R. 1:20A-3.

[5] The malpractice lawsuit also named as defendants Delaney's prior attorneys, the Brach Eichler firm and one of its lawyers.

On September 19, 2017, Delaney filed an Order to Show Cause and verified complaint in the Superior Court, Chancery Division, Essex County, seeking a declaratory judgment that the retainer agreement's arbitration provision was unenforceable. Alternatively, Delaney requested that the Chancery Division stay the arbitration pending the outcome of the legal malpractice action, explaining that to do otherwise would result in the "likelihood of inconsistent rulings and piecemeal litigation." In the verified complaint, Delaney asserted that Sills did not make him "aware of the inequities and costs associated with proceeding with arbitration." More specifically, he asserted that Sills did not explain to him that he might be responsible for arbitration fees that could greatly exceed the filing fees in a comparable court action and for the firm's attorneys' fees and costs, depending on how the arbitrator ruled. Finally, he alleged that he would not have signed the retainer agreement if he had been told that he was giving up his right to a jury trial in the event he had to bring a legal malpractice claim against Sills.

The Chancery Division granted Delaney's Order to Show Cause and heard oral argument.

## B.

On November 9, 2017, the Chancery Division denied Delaney's application to stay the arbitration proceeding and held that the retainer

13

agreement's arbitration provision was valid and enforceable. The court specifically found that the provision's language -- "any dispute with respect to the Firm's legal services and/or payment by you of amounts to the Firm" will be submitted to arbitration -- was sufficiently broad to encompass a claim of legal malpractice. Additionally, the court determined that Delaney waived his right to trial by jury by agreeing to the unambiguously stated arbitration provision, citing Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014), and further observed that a law firm has no obligation to explain to a client the terms of a clearly written retainer agreement that "can be understood by a layperson." Finally, the court noted that Delaney had sufficient time to consider the import of the retainer agreement.[6]

The Chancery Division and Law Division entered separate orders directing that Delaney's malpractice action proceed in arbitration and dismissing his malpractice complaint filed in the Law Division.

---

[6] The Chancery Division incorrectly concluded that Delaney had twenty-two days to ponder the retainer agreement handed to him by the Sills attorney on September 16, 2015. In fact, Delaney signed the agreement on that date. The Chancery Division believed that Delaney did not sign and return the initial agreement until October 8, 2015, but it was Dickey's supplemental retainer letter that Delaney signed and returned on that date.

14

## C.

In an unpublished opinion, the Appellate Division declared that the arbitration provision in the Sills retainer agreement was unenforceable because Sills did not fulfill its fiduciary responsibility under the Rules of Professional Conduct to explain to its client the effect of arbitrating a future malpractice action. The Appellate Division primarily focused its analysis on RPC 1.4(c), which requires that a lawyer "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." In doing so, it noted that "[t]he potential effect of an agreement to arbitrate must be clear to the client to be binding upon him." (alteration in original) (quoting Kamaratos v. Palias, 360 N.J. Super. 76, 87 (App. Div. 2003)).

The Appellate Division held that, when presenting the retainer agreement to Delaney for his signature, Sills should have provided the thirty-three pages of JAMS arbitration rules incorporated into the agreement, "some of which were material to the arbitration clause and the client's decision to retain Sills." The court emphasized that Sills did not explain the arbitration provision or the JAMS rules to Delaney and that, without having a copy of the rules when he signed the agreement, Delaney could not have agreed to the

15

limitation on his right to discovery or to forgo other benefits available in an action filed in a court.

The Appellate Division observed that although the arbitration provision informed Delaney that "he would be required to pay an equal share of all costs and expenses related to compensation of the arbitrator," without an explanation from Sills, "the client had no way of gauging whether the arbitrator's fee would be closer to $10,000, $50,000 or $100,000." The court also pointed out that the text of the retainer agreement allowed for the arbitrator to impose "reasonable attorneys' fees and reasonable costs" on the client in the malpractice action -- fee-shifting not permissible under New Jersey law.

In conclusion, the Appellate Division stressed that it was not holding that retainer agreements mandating arbitration of legal malpractice claims were per se invalid or that the "reasonable explanation" required by RPC 1.4(c) could not be provided in writing. Rather, it determined only that when an attorney does not provide to the client, at the time of the signing of a retainer agreement with an arbitration provision, a document incorporated into the agreement containing material terms concerning arbitration and gives no explanation of the import of those material terms, the arbitration provision cannot stand.

D.

We granted defendants' petition for certification. 240 N.J. 194 (2019). We also granted the motions of the New Jersey State Bar Association, the Bergen County Bar Association, and the New Jersey Association for Justice to participate as amici curiae.

II.

A.

Sills argues that the clear and unambiguous four-page written retainer agreement handed to Delaney by one of its attorneys, who offered to answer any questions Delaney might have concerning the agreement's contents, satisfied the firm's obligations under the Rules of Professional Conduct. Sills rejects the notion that it had a duty under existing law to provide the client with any additional explanation about arbitration, such as opining on the benefits or disadvantages of arbitrating a future fee dispute or legal malpractice claim. Sills contends that the Appellate Division violated this Court's jurisprudence by failing to place the arbitration provision on an equal footing with other contracts or to view arbitration as a favored means for resolving disputes. Sills also maintains that the Appellate Division erred by retroactively imposing on it new disclosure requirements under the RPCs and by trespassing on the domain of the bodies responsible for promulgating new

ethical obligations -- the Advisory Committee on Professional Ethics, the Professional Responsibility Rules Committee, and this Court. Sills asks this Court to reverse and remand the fee dispute and legal malpractice claim for arbitration.

B.

Delaney counters that Sills breached its fiduciary duty to him by including an arbitration provision in the retainer agreement and then by failing to explain the parts that did not benefit him in the event the firm committed malpractice. That he asked no questions about the retainer agreement is of no moment, he argues, because under RPC 1.4(c) the firm had a duty to disclose that the language about arbitrating "any dispute with respect to the Firm's services" would encompass a malpractice claim against the firm. Delaney maintains that he came to Sills to engage its services in his contract dispute with business partners -- not as the firm's sophisticated and wary adversary. He insists that Sills had an ethical duty to disclose to him how -- in the event Sills committed malpractice -- he benefitted by waiving his rights to sue and publicly air his dispute in court before a New Jersey judge and jury, to expansive discovery, to appeal, and not to be bound by an automatic confidentiality requirement.

18

Delaney also asserts that, in violation of RPC 1.8(h)(1), the arbitration provision impermissibly made him potentially liable for Sills's legal fees and shielded Sills from a claim for punitive damages. He argues that the conflicting interest between Sills and its client made the firm incapable of giving him disinterested guidance. He therefore urges this Court to hold that retainer agreements, like this one, requiring mandatory arbitration of legal malpractice claims are against public policy and our ethics rules.

C.

Amicus New Jersey State Bar Association asks this Court to reverse that part of the Appellate Division's judgment that imposes new professional obligations on attorney-client communications and attorney retainer agreements and to allow the ethical issues raised to be vetted through the formal rulemaking process. The State Bar Association expresses concern that the Appellate Division's interpretation of RPC 1.4(c) will require lawyers to engage in "an in-depth review of legal services agreements with prospective clients" beyond the present requirement that lawyers provide "a reasonable explanation" about a retainer agreement sufficient for clients to make an informed decision about the representation.

The Bergen County Bar Association recognizes that retainer agreements mandating arbitration for disputes, such as malpractice claims, raise "novel"

19

and "important" questions about disclosures that lawyers are required to make to clients. It recommends that any proposed disclosure requirements be evaluated by the appropriate Supreme Court committees and through the rulemaking process, and that any new disclosure requirements should be imposed prospectively only.

The New Jersey Association for Justice posits that in light of the imbalance of power between a lawyer and client and the lawyer's fiduciary obligation to the client, "mandatory arbitration clauses in attorney-client retainer agreements [are] inherently unfair and unreasonable." It urges this Court to prohibit mandatory arbitration provisions in retainer agreements to protect against "unwitting and uninformed prospective waivers of significant rights" by clients at the very moment they retain counsel.

### III.

### A.

We must determine what disclosures an attorney must make to a potential client about a provision included in a retainer agreement that mandates arbitration of a future fee dispute or legal malpractice claim. Typically, a retainer agreement addresses the terms governing an attorney's representation of the matter for which the client has sought the attorney's counsel. Here, the retainer agreement provides for the terms governing a quite

20

different matter, a future event -- a time when the attorney and the client might become adversaries, a time when the client might file a malpractice lawsuit against the lawyer for money damages. The planning for that discordant event -- for an adversarial relationship with a client to whom the attorney owes a fiduciary duty -- signals that the interests of the lawyer and client may be divergent even at the inception of the attorney-client relationship.

Although, presumably, Sills concluded that arbitration would be a more favorable dispute-resolution forum for the firm and its client in the event of a malpractice action, it is at least reasonably debatable whether the client would be best served by substituting an arbitral forum for a judicial forum to litigate an attorney's malpractice. See Kamaratos, 360 N.J. Super. at 89 (Fuentes, J.A.D., concurring) ("The insertion of a commercial arbitration clause in a retainer agreement . . . pit[s] the lawyer's interests against the client's. The terms and features of an arbitration clause are designed, not for the client's benefit, but to protect and advance the lawyer's interest in a forum of his or her choosing.").

In an arm's-length transaction, ordinarily, a vendor and purchaser are free to agree to mutually acceptable contractual terms in pursuit of their individual best interests. But the formation of the attorney-client relationship

21

is not an ordinary commercial transaction, and "a retainer agreement is not an ordinary contract." Balducci v. Cige, 240 N.J. 574, 580 (2020).

"[A]n attorney's freedom to contract" is subject to this Court's exercise of its constitutional authority to regulate the practice of law. Cohen v. Radio-Elecs. Officers Union, 146 N.J. 140, 155 (1996); N.J. Const. art. VI, § 2, ¶ 3. In exercising our constitutional authority, we have promulgated Rules of Professional Conduct and issued decisions setting forth the "ethical duties that attorneys owe their clients and potential clients." Balducci, 240 N.J. at 591-92. The RPCs and case law make clear "that a retainer agreement [must] satisfy not only ordinary principles governing contracts, but also the professional ethical standards governing the attorney-client relationship." Id. at 592. Unlike the vendor in a typical commercial transaction, a lawyer serves in a fiduciary role to a client or prospective client. Id. at 580, 592. "[P]reserving the fiduciary responsibility that lawyers owe their clients" is a principle to which this Court is firmly committed. State in Interest of S.G., 175 N.J. 132, 139 (2003) (quoting Cohen, 146 N.J. at 155).

It is the scope of the duties that Sills owed to Delaney in that fiduciary relationship -- as well as the tensions arising from the inclusion of the arbitration provision in the retainer agreement -- that is the preeminent issue in

this case.  Therefore, we must first delineate the lawyer's role as fiduciary to a client or potential client.

## B.

"All fiduciaries are held to a duty of fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others."  In re Honig, 10 N.J. 74, 78 (1952).  Above all else, a lawyer's fiduciary role requires that the lawyer act fairly in all dealings with the client.  Balducci, 240 N.J. at 592; see also Black's Law Dictionary 770 (11th ed. 2019) (stating that a fiduciary owes the beneficiary of his or her concern the duty "of good faith, loyalty, due care, and disclosure").  In that fiduciary role, a lawyer must provide the client with not only "complete and undivided loyalty," but also with advice that will "protect the client's interests."  S.G., 175 N.J. at 139 (quoting In re Dolan, 76 N.J. 1, 9 (1978)).  The foundation of the attorney-client relationship, like any fiduciary relationship, is trust and confidence.  Ibid.  The client places trust and confidence in the attorney, expecting that the attorney will use his or her superior expertise, knowledge, training, and judgment for the client's benefit.  See ibid.; F.G. v. MacDonnell, 150 N.J. 550, 563 (1997).  A lawyer is never "privileged to exercise an advantage which will in any respect prove detrimental to his client's interests."  Honig, 10 N.J. at 78.

23

"We also must be mindful that lawyers typically prepare retainer agreements [and] that clients rely on the integrity of their lawyers who fashion the agreements . . . ." Balducci, 240 N.J. at 594. In reviewing the fairness of a retainer agreement, "a court may consider the circumstances related to the making of the agreement, including whether the parties 'actually negotiated the agreement,' 'the client's level of sophistication or experience in retaining and compensating lawyers,' and other relevant factors." Id. at 593 (quoting Cohen, 146 N.J. at 160); see also Restatement (Third) of the Law Governing Lawyers § 18 cmt. h (Am. Law Inst. 2000). The attorney, however, bears the burden of "establishing the fairness and reasonableness of the transaction" given the "special considerations inherent in the attorney-client relationship." Cohen, 146 N.J. at 156.

One of the paramount duties of a lawyer is to make necessary disclosures to the client so that the client can make informed decisions. See Dolan, 76 N.J. at 9. That duty is expressed in RPC 1.4(c), which states that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Sills claims that its attorney fulfilled his professional obligation when he handed the client the retainer agreement, which contained an arbitration provision and a hyperlink to the JAMS rules, and asked the client if he had any

24

questions. Delaney, on the other hand, contends that, at a minimum, the Sills attorney had an affirmative duty to advise him of the advantages and disadvantages of arbitrating a malpractice claim before he signed the retainer agreement. Although interpreting RPC 1.4(c) to address this issue is a novel undertaking for our Court, courts and professional ethics committees in other jurisdictions already have trod this terrain. Also, importantly, the American Bar Association (ABA) has spoken on this issue in a formal opinion construing the model rule on which RPC 1.4(c) is patterned.

## C.

In 2002, the ABA issued Formal Opinion 02-425, <u>Retainer Agreement Requiring the Arbitration of Fee Disputes and Malpractice Claims</u> (ABA Opinion), which held that a provision in a retainer agreement requiring "the binding arbitration of disputes concerning fees and malpractice claims" did not violate ABA Model Rule of Professional Conduct 1.4(b), "<u>provided that the client has been fully apprised of the advantages and disadvantages of arbitration</u> and has given her informed consent to the inclusion of the arbitration provision in the retainer agreement."[7] ABA Opinion at 1 (emphasis added). According to the ABA Opinion, under Model Rule 1.4(b), a lawyer's

---

[7] The language of ABA Model Rule of Professional Conduct 1.4(b) is identical to New Jersey's RPC 1.4(c).

25

fiduciary "duty to explain matters to a client" encompasses "the duty to advise clients of the possible adverse consequences as well as the benefits that may arise from the execution of an agreement" that includes an arbitration provision. Id. at 4-5. Thus, the lawyer must "'explain' the implications of the proposed binding arbitration provision 'to the extent reasonably necessary to permit the client to make (an) informed decision' about whether to agree to the [provision's] inclusion" in the retainer agreement. Id. at 5 (quoting Model Rule 1.4(b)). The scope of the disclosure will depend on "the sophistication of the client." Ibid. The lawyer, however, "should make clear that arbitration typically results in the client's waiver of significant rights, such as the waiver of the right to a jury trial, the possible waiver of broad discovery, and the loss of the right to appeal." Ibid. A lawyer "also might explain that the case will be decided by an individual arbitrator or panel of arbitrators and inform the client of any obligation that the lawyer or client may have to pay the fees and costs of arbitration." Id. at 6.

Additionally, the ABA Opinion recognized that a mandatory arbitration provision in a "retainer agreement [that] insulates the lawyer from liability . . . to which she otherwise would be exposed under common or statutory law"

would contravene ABA Model Rule of Professional Conduct 1.8(h).[8]  Id. at 3-

4.  To illustrate that point, the ABA Opinion explains that "if the law of the

jurisdiction precludes an award of punitive damages in arbitration but permits

punitive damages in malpractice lawsuits, the provision would violate Rule

1.8(h) unless the client is independently represented in making the agreement."

Id. at 4.

Professional ethics committees, which primarily operate under the

auspices of state bar associations, have issued advisory opinions reaching

conclusions similar to those in the ABA Opinion.[9]  Those ethics opinions

---

[8]  The Model Rule is substantially similar to New Jersey's RPC 1.8(h), which
provides that

> "[a] lawyer shall not
>
>> (1) make an agreement prospectively limiting the
>> lawyer's liability to a client for malpractice
>> unless the client fails to act in accordance with
>> the lawyer's advice and the lawyer nevertheless
>> continues to represent the client at the client's
>> request.  Notwithstanding the existence of those
>> two conditions, the lawyer shall not make such an
>> agreement unless permitted by law and the client
>> is independently represented in making the
>> agreement . . . ."

[9]  Unlike New Jersey's Advisory Committee on Professional Ethics, which is
appointed by this Court, see R. 1:19-1, the ethics committees in many
jurisdictions that issue professional advisory opinions are creatures of their

instruct attorneys in their jurisdictions that they must disclose the benefits and disadvantages of arbitration when an arbitration provision is included in a retainer agreement. See Ariz. Ethics Op. 94-05, at 5 (1994) (advising that an arbitration clause in a retainer agreement is permissible if, among other things, the attorney "fully discloses, in writing and in terms that can be understood by the client, the advantages and disadvantages of arbitration"); Tex. Ethics Op. 586, 72 Tex. B.J. 128, 129 (2009) (advising that the lawyer must provide "sufficient information about the differences between litigation and arbitration" and "the significant advantages and disadvantages of binding arbitration to the extent the lawyer reasonably believes is necessary for an informed decision by the client");[10] Conn. Ethics Op. 99-20 (1999) (expressing concern over an arbitration provision in a retainer agreement in which the lawyer noted the benefits but not the potential drawbacks of arbitration); Pa. Ethics Op. 97-140, at 3 (1997) (advising that a retainer agreement's arbitration provision must be "fully disclosed in writing to the client, setting forth the principal advantages and disadvantages of arbitration"); N.Y. Cty. Lawyers

state bar associations. The opinions referenced here are products of those committees unless noted otherwise.

[10] This opinion was issued by the Texas Committee on Professional Ethics, whose members are appointed by the Supreme Court of Texas.

Ass'n Ethics Op. 723 (1997) (advising that an attorney must make a full disclosure of the "material differences between arbitration and litigation in a court of law" if an arbitration provision is included in a retainer agreement); Okla. Ethics Op. 312 (2000) (same); Vt. Ethics Op. 2003-7, at 1 (advising that, in the absence of the client seeking the advice of independent counsel regarding a retainer agreement's arbitration provision, the attorney "must (1) fully apprise the client as to the advantages and disadvantages of binding arbitration, and (2) obtain the client's informed consent in writing to the inclusion of the binding arbitration clause in the representation agreement").

Some jurisdictions require lawyers to advise their potential clients to seek the advice of independent counsel before signing a retainer agreement containing an arbitration provision. See, e.g., Pa. Ethics Op. 97-140, at 3 (1997) ("[T]he client [must] be advised and given an opportunity to seek the advice of independent counsel."); Va. Legal Ethics Op. 638, at 1 (1984) (stating that an arbitration provision in a retainer agreement is permissible "provided that the client consents after full disclosure of the effect of such a provision and after the client is advised to seek independent counsel in regard to the advisability of such a provision"). Going even further, Michigan Ethics Opinion RI-257 (1996) bars a provision in a retainer agreement to arbitrate future disputes unless "the client obtains independent counsel concerning the

29

advisability" of agreeing to the arbitration provision. At the far end of the spectrum, the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline has advised that a client's retainer agreement "should not contain language requiring a client to prospectively agree to arbitrate legal malpractice disputes."[11] Ohio Advisory Op. 96-9, at 5 (1996) (emphasis added).

State courts have reached similar conclusions -- that lawyers have a heightened duty of disclosure when they include a provision in a retainer agreement requiring clients to arbitrate future disputes, including malpractice claims against the law firm. In Snow v. Bernstein, Shur, Sawyer & Nelson, P.A., the Supreme Judicial Court of Maine held that an attorney's fiduciary relationship with a client mandates informed consent when the attorney seeks "to enforce a contractual provision that prospectively requires a client to submit malpractice claims against the law firm to arbitration." 176 A.3d 729, 736 (Me. 2017). The Maine high court set forth a "heightened standard" for an attorney to secure the client's informed consent: "the attorney must effectively communicate to the client that malpractice claims are covered under the

---

[11] Now referred to as the Ohio Board of Professional Conduct, each member of this "quasi-judicial body" is appointed by the Ohio Supreme Court. See https://www.bpc.ohio.gov/copy-of-about-the-board.

agreement to arbitrate"; "explain, or ensure that the client understands, the differences between the arbitral forum and the judicial forum, including the absence of a jury" as well as "costs" and "appealability"; and "take into account the particular client's capacity to understand that information and experience with the arbitration process, as these factors may affect both the breadth of information and the amount of detail the attorney is obligated to provide." Id. at 736-37.

Similarly, the Louisiana Supreme Court has determined that a lawyer's fiduciary duty of loyalty and candor to a client requires a full explanation "to the client [of] the possible consequences of entering into an arbitration clause, including the legal rights the client gives up by agreeing to binding arbitration" of future disputes. Hodges v. Reasonover, 103 So. 3d 1069, 1077 (La. 2012). The lawyer's duty of loyalty, the Court explained, "forbids a lawyer from taking any action in his own self-interest which would have an adverse effect on the client." Ibid. To ensure that the client's consent to a binding arbitration clause in a retainer agreement is "truly 'informed,'" ibid., at a minimum, "an attorney must make full and complete disclosure of the potential effects of an arbitration clause, including the waiver of a jury trial, the waiver of the right to appeal, the waiver of broad discovery rights, and the possible high upfront costs of arbitration," id. at 1078. In addition, the retainer

31

agreement "must explicitly list the types of disputes covered by the arbitration clause, e.g., legal malpractice, and make clear that the client retains the right to lodge a disciplinary complaint." Ibid. Last, the attorney must advise the client that he "has the opportunity to speak with independent counsel before signing the contract." Id. at 1077; see also Castillo v. Arrieta, 368 P.3d 1249, 1257 (N.M. Ct. App. 2016) (holding that if a retainer agreement includes a provision requiring the arbitration of a future legal malpractice claim, to secure informed consent, the attorney must provide "any explanation reasonably necessary to inform the client . . . of the material advantages and disadvantages of [arbitration]" and discuss with the client "options and alternatives").

D.

Advisory ethics opinions and judicial opinions in many jurisdictions make clear that, when a retainer agreement includes an arbitration provision, attorneys acting in their fiduciary relationship with a client, at the very least, must explain the advantages and disadvantages of arbitrating a future fee dispute or malpractice action. That is so because of the substantial differences between adjudicating a dispute in a judicial and arbitral forum. We cannot presume that a person untrained and inexperienced in legal practices and procedures would have a familiarity with those differences. The examples

32

below highlight some of the differences between the arbitral JAMS forum in this case and a judicial forum.

In the arbitral forum, a single arbitrator presides over the disputed issues. In a judicial forum, Delaney could bring his malpractice lawsuit in Superior Court in the county where he resides or where Sills maintains its offices, R. 4:3-2(a)(3), and have a jury representing a cross-section of the county's citizens sit in judgment of the case.

In the arbitral forum, the arbitrator's decision is final and binding with no right of appeal. In the judicial forum, the non-prevailing party has a right of appeal to challenge any errors made in the trial court proceedings. See R. 2:2.

In the arbitral forum, the arbitration proceedings are conducted privately, and those proceedings and the award of any damages must be kept confidential. In a judicial forum, the proceedings are held in an open courtroom, and the jury's verdict and award of any damages is a matter of public record. If there is a settlement of the malpractice claim, then any confidentiality provision would be a negotiated term of the settlement.

In this arbitral forum, there is no right to broad discovery. For example, the JAMS rules limit each party to "one deposition of an opposing Party or of one individual under the control of the opposing Party" and the "necessity of

33

additional depositions" is determined by the arbitrator.  In the judicial forum, our Court Rules provide for broad discovery with no set limitation on the number of depositions a party may take.[12]  See R. 4:14; R. 4:15.

In the arbitral forum, under JAMS procedures, both the party initiating arbitration and the party filing a counterclaim must pay a $1,500 filing fee, and the parties are jointly and severally liable for the costs of arbitration and the arbitrator's compensation.  Notably, the attorney-client fee dispute submitted to arbitration has already incurred $34,000 in JAMS costs, which include payments to the arbitrator -- and a hearing has yet to be held.[13]  In the judicial forum, a plaintiff filing a civil complaint must pay a filing fee of $250, and a party filing a counterclaim must pay a filing fee of $175.  See R. 1:43.  Neither party pays for the services of the judge.

In the arbitral forum here, the Sills retainer agreement provides that the arbitrator "will not award punitive damages to either party" and that the parties

---

[12]  Although many arbitrations are conducted with only limited discovery, some arbitral settings allow for broader discovery.  We also do not suggest that a court is not authorized to limit depositions in appropriate circumstances.

[13]  Because of Delaney's challenge to the arbitration, Sills has had to cover the entirety of those fees.

34

"will each be deemed to have waived any right to such damages."[14]  In the judicial forum, a prevailing plaintiff in a legal malpractice action may be entitled to punitive damages.  See Guatam v. De Luca, 215 N.J. Super. 388, 400 (App. Div. 1987).

In the arbitral forum here, the Sills retainer agreement allows the arbitrator to render an award that may include imposing "the costs and expenses of arbitration, reasonable attorneys' fees and reasonable costs" against the non-prevailing plaintiff/client in the malpractice action.  In the judicial forum, imposing reasonable attorneys' fees against a non-prevailing client in a non-frivolous malpractice action is not permissible under our court rules or case law.[15]

_____

[14]  That arbitral provision barring punitive damages in a legal malpractice action evidently is contrary to substantive law.  See, e.g., Osborne v. Keeney, 399 S.W.3d 1, 23 (Ky. 2012) (stating that punitive damages can be awarded in a legal malpractice case against attorneys who have "acted with oppression, fraud, or malice"); Ferguson v. Lieff, Cabraser, Heimann & Bernstein, 69 P.3d 965, 1053 n.3 (Cal. 2003) (same).  See also RPC 1.8(h)(1); ABA Opinion at 3-4.  Delaney did not seek punitive damages in his complaint for legal malpractice against defendants.

[15]  The general rule, known as the American Rule, "prohibits recovery of attorneys' fees 'by the prevailing party against the losing party.'"  In re Estate of Folcher, 224 N.J. 496, 507 (2016) (quoting In re Estate of Stockdale, 196 N.J. 275, 307 (2008)).  A number of exceptions to that rule are set forth by court rule, see R. 4:42-9(a), state statutes, and case law.  In the realm of legal malpractice cases, a prevailing plaintiff in a legal malpractice action may recover attorneys' fees and costs.  Saffer v. Willoughby, 143 N.J. 256, 272

Significantly, not all arbitration provisions are alike, and many have features different from those in the Sills retainer agreement and may include more liberal discovery. To be sure, arbitration can be an effective means of resolving a dispute in a low cost, expeditious, and efficient manner. The parties may be afforded the opportunity to choose a skilled and experienced arbitrator in a specialized field to preside over and decide the dispute. And the proceedings may be conducted in a forum out of the public glare.

We make no value judgment whether a judicial or arbitral forum is superior in resolving a legal malpractice action, for that is a determination to be made by the lawyer and client, after the lawyer explains to the client the differences between the two forums so the client can make an informed decision.

## IV.

The arbitration provision at issue in this case -- on its face -- would be enforceable if the Sills retainer agreement were a typical contract between a commercial vendor and a customer. See Atalese, 219 N.J. at 444-45. In clear and unambiguous language, the arbitration provision explains that Delaney "is

---

(1996); see also Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427 (2001) (allowing a prevailing plaintiff to recover attorneys' fees and costs in an action against an attorney for intentional violation of fiduciary duties).

choosing to arbitrate disputes rather than have them resolved in a court of law." See id. at 447. But Delaney was not purchasing a telephone, a refrigerator, or an automobile -- he was retaining the services of an attorney, licensed to practice law in New Jersey and subject to the Rules of Professional Conduct promulgated by this Court. As earlier discussed, a retainer agreement is not an ordinary contract -- it must conform not only to the legal principles governing contracts, but also to the ethical obligations imposed on attorneys by the RPCs.

RPC 1.4(c)'s mandate that a lawyer "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" applies to every provision of a retainer agreement, not just an arbitration provision. Neither the FAA, 9 U.S.C. §§ 1 to 16, nor the NJAA, N.J.S.A. 2A:23B-1 to -36, stands as an obstacle to the neutral enforcement of the RPCs.

The FAA and "nearly identical" NJAA both "enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). The main thrust of the FAA, as well as the NJAA, is to ensure that states "place arbitration agreements on an equal footing with other contracts," id. at 441 (quoting Concepcion, 563 U.S. at 339), and do "'[not] subject an arbitration agreement to more

37

burdensome requirements than' other contractual provisions," ibid. (quoting

Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)). Under this scheme of

uncompromising neutrality, the FAA and NJAA grant courts the authority to

invalidate an arbitration provision "upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2; accord N.J.S.A.

2A:23B-6(a); see also Concepcion, 563 U.S. at 339; Martindale v. Sandvik,

Inc., 173 N.J. 76, 85 (2002). Our inquiry is twofold: "whether the agreement

to arbitrate all, or any portion, of a dispute is 'the product of mutual assent, as

determined under customary principles of contract law,'" Flanzman v. Jenny

Craig, Inc., 244 N.J. 119, 137 (2020) (quoting Kernahan v. Home Warranty

Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019)), and whether it satisfies "the

professional ethical standards governing the attorney-client relationship,"

Balducci, 240 N.J. at 592.

For example, in Balducci, we made clear that an attorney has a duty to

provide the client with needed information about the fee provisions in a

retainer agreement to allow the client to make an informed decision whether to

engage the attorney's services. Id. at 601-04. Thus, "an attorney has an

obligation to provide the client with meaningful information about the

potential aggregate hourly fees and costs that may be incurred during the

course of the litigation so that the client may make an intelligent assessment

38

whether to retain the attorney and on what terms." Id. at 603; see also Cohen, 146 N.J. at 157 (stating that to meet their fiduciary obligations to their clients, lawyers "must explain at the outset the basis and rate of the fee" and "advise the client of potential conflicts, the scope of representation, and the implications of the agreement").

When viewed through the lens of the RPCs, arbitration provisions are not treated differently from other provisions in a retainer agreement. Requiring attorneys to explain to a client the advantages and disadvantages of arbitration so that the client can make an informed decision whether to arbitrate a future fee dispute or legal malpractice claim against the firm does not single out a retainer agreement's arbitration provision for disparate treatment and therefore does not run afoul of the FAA or NJAA. See Snow, 176 A.3d at 739; see also Hodges, 103 So. 3d at 1077.

## V.

## A.

We conclude that the professional and fiduciary obligation imposed on a lawyer by RPC 1.4(c) -- to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" -- requires that the lawyer discuss with the client the basic advantages and

39

disadvantages of a provision in a retainer agreement that mandates the arbitration of a future fee dispute or malpractice claim against the attorney.

We reach that conclusion for a number of reasons. Given the lawyer's fiduciary duties of loyalty and candor to the client, there should never be a perception that a lawyer is exalting his own self-interest at the expense of the client. The client comes to a lawyer for assistance in addressing a particular issue -- such as representing the client in bringing or defending a claim, or in purchasing a home or a business, or handling a matrimonial dispute involving the custody of children and division of assets. The client is likely concentrating on his legal situation or predicament and looking for help from the attorney -- and not thinking that the lawyer may commit malpractice in handling the case. The client is not likely anticipating a day when he may have to do battle with the lawyer, who is retained to promote his interests and protect his rights. See Jean Fleming Powers, Ethical Implications of Attorneys Requiring Client to Submit Malpractice Claims to ADR, 38 S. Tex. L. Rev. 625, 647-48 (1997).

Yet, the insertion of an arbitration provision in a retainer agreement indicates that the attorney has given thought to the prospect that the client may be a future adversary and has selected the forum in which potential disputes, whether about the attorney's fees or services, will be resolved. Presumably,

the attorney has concluded that an arbitral forum is in his best interests -- and maybe in the best interests of the client as well -- if there is a later falling out. But whether the client's interests are best served by agreeing in advance to submit a future malpractice claim to an arbitral forum will be a reasonably debatable issue. We will not find universal agreement among members of the bar that a client is better served arbitrating a malpractice claim as opposed to submitting the case to our judicial system, which guarantees, among other things, the right to broad discovery and the right to a jury trial. Not even a shadow of a conflict of interest should be cast over the attorney-client relationship at its inception. To dispel that shadow, lawyers should make the necessary disclosures in a disinterested manner to allow clients to make an informed decision, as required by the RPCs.

Consistent with ABA Formal Opinion 02-425, the weight of authority as expressed in professional advisory opinions and judicial case law in other jurisdictions, and this Court's interpretation of its own RPCs, we hold that attorneys who insert provisions in their retainer agreements to arbitrate future fee disputes or legal malpractice claims must explain the advantages and disadvantages of the arbitral and judicial forums. Attorneys can fulfill that requirement in writing or orally -- or by both means.

41

Attorneys may explain, for example, that in arbitration the client will not have a trial before a jury in a courtroom open to the public; the outcome of the arbitration will not be appealable and will remain confidential; the client may be responsible, in part, for the costs of the arbitration proceedings, including payments to the arbitrator; and the discovery available in arbitration may be more limited than in a judicial forum.

Additionally, a lawyer who drafts a retainer agreement that channels any future legal malpractice action into an arbitral forum must say so directly in the written agreement. The client should not be left to discern the meaning of language that is clothed in ambiguity.

In Snow, the Supreme Judicial Court of Maine found that, in context, a retainer agreement's language that "any other dispute that arises out of or relates to this agreement or the services provided by the law firm shall also . . . be subject to binding arbitration" was insufficient to place the client on notice that a future malpractice action was within the scope of the agreement. 176 A.3d at 737. Here, the Sills retainer agreement states that "any dispute (including, without limitation, any dispute with respect to the Firm's legal services and/or payment by you of amounts to the Firm), . . . will be submitted to and finally determined by Arbitration" and "[a]ny disputes arising out of or relating to this engagement agreement or the Firm's engagement by you will

be conducted pursuant to the JAMS/Endispute Arbitration Rules and Procedures."

We acknowledge that if this were an ordinary commercial contract, the term "any dispute" is broad enough to encompass a dispute about whether the attorney committed legal malpractice. But again, we emphasize that the retainer agreement is not an ordinary contract and that the attorney has a fiduciary duty to make clear the retainer agreement's terms so that the meaning of those terms is readily apparent to the client. See Balducci, 240 N.J. at 594 ("[C]lients rely on the integrity of their lawyers who fashion [retainer] agreements, and . . . , as such, an agreement susceptible to two reasonable interpretations should be construed in favor of the client."). We can well imagine that an attorney might not be eager to discuss legal malpractice at the beginning of an attorney-client relationship, but if the retainer agreement intends to cover that potential scenario, then the attorney must directly and clearly address the subject.

B.

In this opinion, we have set forth the rudimentary requirements expected of attorneys who include a provision in a retainer agreement that mandates the arbitration of a future fee dispute or malpractice action. We do not pretend that this opinion is or should be the last word on this subject. We believe that

43

the issues raised here would benefit from further study and discussion. We refer the issues raised in this opinion to the Advisory Committee on Professional Ethics. The Committee may make recommendations to this Court and propose further guidance on the scope of an attorney's disclosure requirements.

## VI.

### A.

We now address the relevant facts of the case before us.

Delaney came to the Sills law firm for representation in a commercial lawsuit against his business partners. A Sills attorney presented him with a four-page retainer agreement. The third page of the agreement contained an arbitration provision, and the fourth page generally described some of the rules governing arbitration and provided a hyperlink to thirty-three pages of JAMS procedures. A hard copy of those procedures, which detailed the limitations on pre-arbitration discovery and the inapplicability of the rules of evidence at the arbitration proceeding, was not given to Delaney. The Sills attorney advised Delaney to take his time reading the engagement letter and ask any questions he had about it.

The Sills attorney did not explain to Delaney that, in the event of a future malpractice action against the firm, the retainer agreement's provisions

44

barring an arbitrator from awarding punitive damages to the plaintiff and allowing the arbitrator to award the costs and expenses of arbitration against the plaintiff were unenforceable because RPC 1.8(h)(1) forbids a lawyer from making "an agreement prospectively limiting the lawyer's liability to a client for malpractice."[16] The Sills attorney did not explain the advantages and disadvantages of arbitrating a malpractice action. He did not explain, for example, that in the judicial forum Delaney would have access to broad discovery, the right to a jury trial in an open courtroom, the right to speak freely on the subject matter without confidentiality restrictions, and the right to appeal an erroneous ruling. He did not explain that in a judicial forum Delaney would not have to pay a high filing fee or for the services of the judge.

We acknowledge that Delaney was a sophisticated businessman and not unfamiliar to litigation, but we cannot ascribe to him the knowledge of attorneys whose training and experience make them keenly aware of the fine distinctions between an arbitral and judicial forum. To be sure, the detailed arbitration provisions in the Sills retainer agreement easily meet the standard

---

[16] Sills agreed at oral argument before this Court that the parts of the arbitration provision at odds with RPC 1.8(h) were severable from the agreement.

45

for an arbitration provision in a typical commercial contract. But, as we have repeatedly noted in this opinion, lawyers are held to a higher standard under the RPCs in the fulfillment of their fiduciary obligations to their clients.

B.

The opinion we issue today is not a break with established precedent, and the professional principles we apply to the unique facts of this case are not foreign to our jurisprudence. Our ruling is foreshadowed by ABA Formal Opinion 02-425 and opinions issued by courts and professional ethics committees in many other jurisdictions that have addressed the issue. Nevertheless, the retroactive application of our ruling today may not have been reasonably anticipated and would disturb the settled expectations of many lawyers throughout our state, who genuinely believed that an arbitration provision that met the standards of such cases as Flanzman, Kernahan, and Atalese would satisfy the requirements of our RPCs. Therefore, our holding will apply prospectively from the day of the issuance of this opinion, with one exception.

The general approach in our jurisprudence is that the plaintiff receives the benefit of the rule established in the opinion -- even if it is a new rule -- because "to do otherwise would not only deprive the plaintiff of any benefit resulting from her own efforts but would also make it less likely that, in the

46

future, individuals will be willing to claim rights, not yet established, that they believe are just." See Narleski, 244 N.J. at 228-29 (quoting Kelly v. Gwinnell, 96 N.J. 538, 551 (1984)). In light of that recognized practice, it would be unfair to deprive plaintiff, who has helped clarify the application of our RPCs in his and all future cases, of the relief he has sought -- a judicial forum in which to air his claims.

Because Delaney was not given an explanation of the advantages or disadvantages of arbitration, we hold that the present malpractice action is not subject to the arbitration provision of the Sills retainer agreement. Delaney therefore must be allowed to proceed with this malpractice action in the Law Division.

We realize that Sills did not have the benefit of the clarity of this opinion in interpreting a lawyer's professional obligation under RPC 1.4(c). In reaching this holding, we do not find that Sills or its attorneys violated the Rules of Professional Conduct, and we accept their representations that they acted good faith.

## VII.

We affirm and modify the judgment of the Appellate Division and

47

remand to the Law Division for proceedings consistent with this opinion.[17]

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.

---

[17] Delaney did not challenge the validity of submitting the fee dispute to arbitration until a year after Sills invoked the arbitration provision. An issue to be resolved on remand is whether the arbitration proceeding relating to the fee dispute should be stayed pending the outcome of the malpractice action. We offer no opinion on that subject.