KNOLL, J.
| We are called on to decide whether a binding arbitration clause in an attorney-client retainer agreement is enforceable where the client has filed suit for legal malpractice. This case presents two important countervailing public policies: Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts; by the same token, Louisiana law also imposes a fiduciary duty of the highest order requiring attorneys to act with the utmost fidelity and forthrightness in their dealings with clients, and any contractual clause which may limit the client’s rights against the attorney is subject to close scrutiny.
After our careful study, we hold there is no per se rule against arbitration clauses in attorney-client retainer agreements, provided the clause is fair and reasonable to the client. However, the attorneys’ fiduciary obligation to the client encompasses ethical duties of loyalty and candor, which in turn require attorneys to fully disclose the scope and the terms of the arbitration clause. An attorney must clearly explain the precise types of disputes the arbitration clause is meant to cover and must set forth, in plain language, those legal rights the parties will give up by agreeing to arbitration. In this case, the defendants did not make the necessary 12disclosures, thus, the arbitration clause is unenforceable. Accordingly, the judgment of the lower courts is affirmed.
FACTS AND PROCEDURAL HISTORY
For completeness, we will briefly describe the underlying representation by defendants. Jacqueline Hodges is the founder, sole shareholder, and Chief Executive Officer of Med-Data Management, Inc. (“Med-Data”) and its successor entity, HRC Solutions, Inc. This dispute ultimately arises out of a 2005 asset sale between Med-Data and a company known as MedAssets, Inc. Med-Data developed software used by hospitals to manage their billing and medical insurance claims. Med-Data sold the rights to the software to MedAssets, Inc., in exchange for an upfront cash payment and a portion of any future sales of the former Med-Data software, provided a certain minimum threshold was met. On September 25, 2007, MedAssets informed Hodges it had not met the threshold of sales necessary to trigger additional payments.
Plaintiffs retained Kirk Reasonover, of the law firm of Reasonover & Olinde, to sue MedAssets in federal court in Atlanta, Georgia. Reasonover and the Hodges had an ongoing business relationship since 1998. The parties agreed to a “blended” fee schedule, meaning the firm charged a reduced hourly rate in exchange for taking a contingency interest in the case. The retainer agreement contained the following arbitration clause:
Any dispute, disagreement or controversy of any kind concerning this agreement, the services provided hereunder, or any other dispute of any nature or kind that may arise among us, shall be submitted to arbitration, in New Orleans, Louisiana. Such arbitration shall be submitted to the American Arbitration Association.
The retainer agreement was dated August 27, 2007, and signed by both Jacqueline and Stephen Hodges. On December 3, 2007, the Hodges filed a complaint against MedAssets in the Northern District of Georgia federal court, |salleging breach of contract and breach of the duty of good faith and fair dealing. MedAssets filed a motion to dismiss, citing the binding *1072 alternative dispute resolution clause in the asset purchase agreement. The court found the clause only applied to disputes over the amount of the payout, and not to allegations of breach of the duty of good faith and fair dealing, and denied the motion. Hodges v. MedAssets Net Revenue Systems, LLC, 2008 U.S. Dist. LEXIS 12254, 2008 WL 476140 (N.D.Ga.2008).
In August '2009, Stephen Hodges approached Kirk Reasonover and asked whether Reasonover & Olinde would be open to renegotiating the original retainer agreement. Defendants agreed, and the parties entered into a “revised fee agreement” based purely on a contingency fee. The revised fee agreement contained an arbitration clause identical to the one in the original agreement and stated “[b]e-cause this agreement involves the acquisition of an additional interest in your case, and your interests in this transaction are adverse to ours, you should review this agreement with independent counsel.” The Hodges chose not to retain independent counsel and signed the revised fee agreement on August 31, 2009.
Plaintiffs’ claims against MedAssets ultimately failed to survive a motion for summary judgment. This suit for legal malpractice followed. Defendants filed declinatory exceptions alleging improper venue and lack of subject matter jurisdiction based on the binding arbitration clause.
' The District Court denied defendants’ exceptions, citing Louisiana Rule of Professional Conduct 1.8(h)(1), which states: “A lawyer shall not make an agreement prospectively limiting the lawyer’s liability to a client for malpractice unless the client is independently represented in making the agreement.” The court found the mandatory arbitration clause was a prospective limitation of liability and, because the Hodges were not represented by independent counsel, the arbitration clause was invalid. The court of appeal denied defendants’ request for supervisory |4writs, Judge Bonin dissenting. We granted writs to address the enforceability of mandatory arbitration clauses in attorney-client agreements. Hodges v. Reasonover, 12-0048 (La.2/17/12), 82 So.3d 272.

Applicable Legal Principles

The positive law of Louisiana favors arbitration as a preferred method of alternative dispute resolution. Aguillard v. Auction Management Corp., 04-2804 (La.6/29/05), 908 So.2d 1, 7. This policy is set forth in the Louisiana Binding Arbitration Law, which states:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La.Rev.Stat. § 9:4201
Similarly, the Federal Arbitration Act (“FAA”), 9 U.S.C. § 1 et seq., reflects a “liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.” Moses H. Cone Memorial Hospital v. Mercury Constr. Co., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). To the extent that federal and state law differ, the FAA preempts state law as to any written arbitration agreement in a contract involving interstate commerce. FIA Card Services, N.A. v. Weaver, 10-1372 (La.3/15/11), 62 So.3d 709, 712; Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/00), 752 So.2d 825, 827.
*1073 At the same time, agreements between law firms and clients are held to higher scrutiny than normal commercial contracts because of the fiduciary duties involved. “The relation of attorney and elient is more than a contract. It superin-duces a trust status of the highest order and devolves upon the attorney the | imperative duty of dealing with the client on the basis of the strictest fidelity and honor.” Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266, 1271 (citations omitted). “In no other agency relationship is a greater duty of trust imposed than in that involving an attorney’s duty to his client.” Id. An attorney is also bound by the ethical requirements set forth in the Louisiana Rules of Professional Conduct, which have the force of substantive law. See Succession of Cloud, 530 So.2d 1146, 1150 (La. 1988) and citations therein. An attorney-client contract which directly violates a disciplinary rule is unenforceable. Id.
Courts must closely scrutinize attorney-client agreements for signs of unfairness or overreaching by the attorney:
[Although the basic relationship between client and lawyer may be contractual, that association is nonetheless subject to the inherent authority of this Court to positively affect that fiduciary relationship through its power to regulate the practice of law.
As we stated in Succession of Wallace, 574 So.2d 348 (La.1991):
This court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship. The sources of this power are this court’s inherent judicial power emanating from the constitutional separation of powers, the traditional inherent and essential function of attorneys as officers of the courts, and this court’s exclusive original jurisdiction of attorney disciplinary proceedings. The standards governing the conduct of attorneys by rules of this court unquestionably have the force and effect of substantive law.
Therefore, any dispute relative to an attorney-client relationship is subject to the close scrutiny of this Court and is resolved under the codal provisions as illuminated by the [Rules of Professional Conduct].
Chittenden v. State Farm Mut. Auto. Ins. Co., 00-414 (La.5/15/01), 788 So.2d 1140, 1147-8 (citations omitted).

IsAnalysis

Louisiana Rule of Professional Conduct 1.8(h)(1) prohibits a lawyer from “prospectively limiting the lawyer’s liability to a client for malpractice unless the client is independently represented in making the agreement.” The question of whether an arbitration clause is a prospective limitation of liability is res nova in Louisiana, but has arisen in other jurisdictions. The American Bar Association Ethics Committee issued a formal opinion stating that an arbitration clause does not violate Model Rule of Professional Conduct 1.8(h)(1), which is identical to the Louisiana rule, unless some aspect of the arbitration clause limits the lawyer’s substantive liability:
[M]andatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law. For example, if the law of the jurisdiction precludes an award of punitive damages in arbitration but permits punitive damages in malpractice *1074 lawsuits, the provision would violate Rule 1.8(h) unless that client is independently represented in making the agreement. ■
ABA Formal Ethics Opinion 02^425.
We agree. Unless otherwise limited by the parties’ contract or the rules of the specific arbitral tribunal, arbitrators have the power to render whatever relief is justified by the record, to the full extent provided for by law and equity. “By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.” Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Provided the arbitrator retains full authority to render an award fully compensating a client for his injuries, most state ethics committees have held an arbitration clause is not a true limitation of an attorney’s liability:
17An agreement to limit liability is, in substance, an agreement that says that even though the lawyer errs in fulfilling certain duties to the client, the lawyer will not be liable to the extent that common and statutory law would otherwise make the lawyer liable. Perhaps if a particular forum had rules that themselves limited liability, then selection of such a forum could fairly be said to limit liability indirectly. Or if the arbitration agreement were a sham, such as an agreement to arbitrate before the lawyer’s partner, then one could argue that its practical effect was to limit liability. Mutually agreed upon arbitration pursuant to the state and federal acts entail no such liability limiting rules. Nor is an agreement to arbitrate before a fair arbitrator selected at the time of the dispute, or appointed by the court, a sham. The arbitrator to whom resort would be made pursuant to the proposed agreement thus remains as unlimited as any judge or jury, and perhaps more so, in his or her freedom to find the lawyer liable, and to award any and all compensation or other damages that a court could award.
Maine Professional Ethics Commission Opinion 170. Accord, Vermont Advisory Ethics Opinion 2003-07; Arizona Ethics Opinion 94-05.
Reasonover & Olinde argue this clause does not insulate defendants from liability because it does not purport to hold the firm harmless, change the standard of care, exclude any category of damages, or create any unreasonable procedural requirements which will effectively prevent plaintiffs from seeking recovery. The agreement specifically calls for the application of Louisiana substantive law to the arbitral proceedings, meaning the Hodges are entitled to the same rights and remedies as if the case were being heard in state court.
Plaintiffs admit the arbitration clause places no explicit limitations on defendants’ substantive liability but claim there are unreasonable procedural barriers which may deter clients from bringing claims in arbitration. Specifically, plaintiffs claim the initial filing fees for the American Arbitration Association (“AAA”) are $18,800,[1] compared with the roughly $500 fee for filing a petition in |sOrleans Parish Civil District Court. Plaintiffs con *1075 tend the substantial upfront costs of AAA arbitration may discourage would-be litigants from filing arbitration claims against their attorneys, thus protecting the attorneys from malpractice liability. The Hodges admit they can afford the AAA initial filing fee, but there are many potential litigants who cannot pay such a significant sum.
Nonetheless, we do not believe the initial filing fee constitutes a “prospective limitation of liability” under the meaning of Rule 1.8(h)(1). We note the AAA allows parties whose income is below 200% of the federal poverty guidelines to seek a waiver of the initial filing fees,[2] and the arbitrator, in his discretion, may apportion the arbitration expenses at the close of the proceedings.[3]
It is an unfortunate reality that litigation can be a costly endeavor, whether in state court, federal court, or arbitration. Initial filing fees are only a small part of the costs associated with high-stakes commercial litigation. Indeed, comparatively low cost is often touted as one of the primary benefits of arbitration over litigation. Arbitration generally provides for streamlined discovery, little to no motion practice, and flexible procedure, all of which may potentially save significant amounts of time and money and thus recoup the initial filing costs. See Drahozal, supra note 3, at 815, 829-31. Given these factors, we cannot say the overall costs of arbitration will be so clearly burdensome to the client as to constitute an effective limit of liability. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (“[W]here, as here, a party 19seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.”)
Our holding is in accord with the recent federal Fifth Circuit decision of Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439 (5th Cir.2008). Paul and Lisa Ginter, a married couple from South Carolina, hired Fred Belcher, a Baton Rouge attorney, for assistance in adopting a child. After the adoption, the Ginters discovered the child suffered from fetal alcohol syndrome. The Ginters sued Belcher in federal court based on alleged negligent and intentional misrepresentations regarding the health of the birth mother and his failure to thoroughly investigate the infant’s health as promised. Belcher filed a motion to dismiss, as the retainer agreement required any lawsuit between the parties to be filed solely in the 19th Judicial District Court. Id. at 440-41.
The Ginters argued the forum selection clause violated Louisiana Rule of Professional Conduct 1.8(h)(1) because it mandated a “hometown” forum which they believed would be unfairly favorable to Belcher, as a local attorney. The Fifth Circuit rejected this argument: “Louisiana law is silent on the contours of what constitutes limiting malpractice liability. Nevertheless, we have some conceptual difficulty *1076 in stretching the concept of limiting liability to cover situations where an attorney selects a forum where he or she might have some conceivable advantage.” Id. at 442. While some forum selection clauses may be so onerous to the client as to effectively act as a limit of the attorney’s liability, this did not apply where the clause called for a presumptively neutral forum:
A mandatory-arbitration clause (or any forum-selection clause) might in a particular case give the lawyer an advantage over the client. But a clause that has only the possibility of reducing by some small percent the chances of an attorney’s being found liable is categorically different from a clause that truly limits liability — for example, a clause that either directly 110limits liability (e.g., a hold-harmless clause) or a clause that so handicaps a client in a malpractice suit as to be a practical limitation on liability (e.g., a clause requiring suit to be filed within days of the malpractice’s occurring)....
[W]e can distill a general rule that including a forum-selection clause into an attorney-client agreement is usually not a limitation on malpractice liability. Instead, it is only a limitation when the selected forum has rules expressly limiting liability or if litigating in that forum would be so unfair as to be a practical limitation on liability.
Id. at 443-44.
We agree with this reasoning. An arbitration clause does not inherently limit or alter either party’s substantive rights; it simply provides for an alternative venue for the resolution of disputes. The AAA is a well-known alternative dispute resolution organization, and there is no evidence that arbitration conducted in accordance with AAA rules, before AAA-approved arbitrators, would be presumptively unfair or biased.[4] In summary, a binding arbitration clause between an attorney and client does not violate Rule of Professional Conduct 1.8(h) provided the clause does not limit the attorney’s substantive liability, provides for a[nneutral decision maker, and is otherwise fair and reasonable to the client.[5]
Our analysis, however, does not end here. The Hodges also urge this Court to find the arbitration clause unenforceable because Reasonover & Olinde did not adequately disclose the full scope of the arbitration clause and the potential consequences of agreeing to binding arbitration.
*1077 An attorney’s fiduciary duties include the duties of candor and loyalty in all dealings -with a client. The duty of candor requires a lawyer to “explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.” ABA Model Rule of Professional Conduct 1.4(b); see also Louisiana Rule of Professional Conduct 1.4(b)(“The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued.”) The duty of loyalty forbids a lawyer from taking any action in his own self-interest which would have an adverse effect on the client. See Comment to ABA Model Rule of Professional Conduct 1.7.
Inherent in these duties is the principle that an attorney cannot take any action adversely affecting the client’s interest unless the client has been fully apprised, to the extent reasonably practicable, of the risks and possible consequences thereof — that is, the client must give informed consent. Louisiana Rule of Professional Conduct 1.0(e) defines “informed consent” as consent given after a “lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.” In the context of attorney-client arbitration clauses, this means the lawyer has an obligation to fully explain to the client the possible consequences of | ^entering into an arbitration clause, including the legal rights the client gives up by agreeing to binding arbitration. Without clear and explicit disclosure of the consequences of a binding arbitration clause, the client’s consent is not truly “informed.” Accord, ABA Formal Ethics Opinion 02-425 (The client must be “fully apprised of the advantages and disadvantages of arbitration” in order to “make an informed decision about whether to agree to the inclusion of the arbitration provision”); Oklahoma Bar Association Legal Ethics Committee Opinion B12 (2000)(“consent cannot be knowing without disclosure of the material differences between arbitration and litigation.”)
Louisiana law has long required attorneys to fully disclose all risks to the client before entering into a contract with the potential to negatively affect the client’s rights. See Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266, 1273; Plaquemines Parish Commission Council v. Delta Dev. Co., Inc., 502 So.2d 1034, 1040 (La.1987). This is certainly the case with binding arbitration clauses, which affect the client’s rights to a jury and appeal. Attorneys, by virtue of their legal education and training, have an advantage over clients, who may not understand the arbitration process and the full effects of an arbitration clause. At a minimum, the attorney must disclose the following legal effects of binding arbitration, assuming they are applicable:
• Waiver of the right to a jury trial;
• Waiver of the right to an appeal;
• Waiver of the right to broad discovery under the Louisiana Code of Civil Procedure and/or Federal Rules of Civil Procedure;
• Arbitration may involve substantial upfront costs compared to litigation;
• Explicit disclosure of the nature of claims covered by the arbitration clause, such as fee disputes or malpractice claims;
11S* The arbitration clause does not impinge upon the client’s right to make a disciplinary complaint to the appropriate authorities;
• The client has the opportunity to speak with independent counsel before signing the contract.
*1078 Given these principles, we find Reason-over & Olinde failed to make the necessary full disclosures to the Hodges. The arbitration clause did not specifically enumerate the types of disputes it was meant to cover, including malpractice claims. Defendants never mentioned malpractice while negotiating the contract, and Stephen Hodges testified that, to his understanding, the arbitration clause was only intended to cover fee disputes: “I was not even contemplating malpractice. It was not even considered. We didn’t even know to ask the question.... We assumed that it was an arbitration of fees. And I would say again that we had a ten year relationship with Kirk Reasonover and paid him. And I will tell you that we had no fee disputes in ten years, so it seemed largely inconsequential.” Although the fee agreement does advise the Hodges of their right to speak with independent counsel, it does not warn of the waiver of the right to a jury trial, the right to appeal, and the right to broad discovery.
Defendants argue these disclosures were unnecessary because the Hodges are sophisticated businesspeople who understood the effects of arbitration, as the applicability of an arbitration clause was a major issue in the Hodges’ lawsuit against Me-dAssets. We decline to find the extent of an attorney’s fiduciary duty depends on the sophistication of the client. To do so would create two classes of clients and implicitly hold that well-educated, business-savvy clients are somehow less deserving of an attorney’s full candor and loyalty.[6] This rule would be directly | ^contrary to the high ethical standards set forth in the Rules of Professional Conduct and repugnant to Louisiana public policy. Thus, the Hodges’ alleged sophistication and familiarity with arbitration are irrelevant; they are entitled to the same warnings and disclosures as any client.
Conclusion
In summary, we find arbitration clauses in attorney-client agreements may be enforceable, provided the contract does not limit the attorney’s substantive liability, is fair and reasonable to the client, and does not impose any undue procedural barrier to a client seeking relief. However, an attorney must make full and complete disclosure of the potential effects of an arbitration clause, including the waiver of a jury trial, the waiver of the right to appeal, the waiver of broad discovery rights, and the possible high upfront costs of arbitration. The contract must explicitly list the types of disputes covered by the arbitration clause, e.g., legal malpractice, and make clear that the client retains the right to lodge a disciplinary complaint. Because those requirements were not met in this case, the arbitration clause is not enforceable.[7]
*1079 The judgment of the lower' courts is affirmed, and the matter is remanded to the district court for further proceedings.
AFFIRMED AND REMANDED.
KIMBALL, Chief Justice, dissents with reasons.
JOHNSON, Justice, concurs in result.
VICTORY, Justice, dissents and assigns reasons.
WEIMER, Justice, concurs and assigns reasons.

. The AAA initial filing fee is determined via a sliding scale; the higher the plaintiff's demand, the higher the fee. The fees in this case are unusually high because the Hodges claim seventy million dollars in damages.

. See "Administrative Fee Waivers and Pro Bono Arbitrators,” available at http://www. adr.org/aaa/ShowPDF?doc=ADRSTG_ 004098 (visited June 13, 2012).

. AAA Commercial Arbitration Rule 49: "The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.” See also Christopher R. Drahozal, Arbitration Costs and Forum Accessibility: Empirical Evidence, 41 U. Mich. J.L. Reform 813, 818-19 (2008).

. Louisiana law provides a judicial remedy if, after the arbitration is concluded, either party believes the arbitrator was not fair and impartial. A court may vacate an arbitration award in certain limited circumstances:
A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
D.Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
La.Rev.Stat. § 9:4210.

. Cf. Lafleur v. Law Offices of Anthony G. Buzbee, P.C., 06-466 (La.App. 1 Cir. 3/23/07), 960 So.2d 105, 113. Defendant attorney drafted a unilateral arbitration clause which applied only to the client while allowing the attorney to seek judicial remedies. The clause also required the client to pay all costs of arbitration even if he was the prevailing party. This provision was held unconscionable.

. See Mayhew v. Benninghoff, 53 Cal.App.4th 1365, 1368, 62 Cal.Rptr.2d 27 (1997)(Court “baffled” by defendant attorney’s argument that “ethical responsibilities are lessened because he was dealing with a client who is very wealthy” and “highly schooled in business affairs.”)

. Plaintiffs raise an alternate argument based on peremption. Plaintiffs urge, given this Court's holding in Reeder v. North, 97-0239 (La. 10/21/97) 701 So.2d 1291, the strict per-emptive periods for legal malpractice claims cannot be interrupted or suspended by the filing of a petition for arbitration. Thus, plaintiffs are effectively prevented from taking advantage of arbitration lest their claims become perempted during the course of the arbitration. Defendants counter that the Federal Arbitration Act preempts any state law which would prevent the parties from enforcing a valid arbitration clause and award. Although this Court may eventually be called upon to resolve this apparent conflict, no per-emption defense has been raised, so the issue is not currently ripe for decision.