# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2021 CA 0391

## WILLARD O. LAPE, III

### VERSUS

## THOMAS ADAIR BROWN AND THOMAS COSTANZA

*Judgment Rendered:* **DEC 3 0 2021**

********

Appealed from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2020-12266

The Honorable Reginald T. Badeaux, III, Judge Presiding

********

| | |
|---|---|
| Patricia Fox<br>Covington, Louisiana | Counsel for Plaintiff/Appellee<br>Willard O. Lape, III |
| Alice Estill<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Thomas Adair Brown |

BEFORE: WHIPPLE, C.J., HOLDRIDGE, LANIER,
WOLFE, AND BURRIS,[1] JJ.

---

[1] The Honorable William J. Burris, retired, is serving pro tempore by special appointment of the Louisiana Supreme Court.

**LANIER, J.**

Defendant challenges the district court's November 13, 2020 judgment ordering him to arbitrate an attorney fee dispute with plaintiff. After review, we reverse the judgment.

## FACTS AND PROCEDURAL HISTORY

On June 1, 2020, Willard O. Lape, III filed a "Petition to Compel Arbitration," naming Thomas Adair Brown and Thomas Costanza as defendants. Mr. Lape, an attorney, alleged that defendants hired him to perform legal services in connection with a lawsuit filed in the 22nd Judicial District Court in St. Tammany Parish ("Thomas A. Brown and Thomas Costanza v. Tchefuncte Harbour Association, Inc., et al.", Docket No. 2018-13639). Mr. Lape alleged that he withdrew from representing the defendants due to lack of communication and non-payment of invoices for both fees and costs advanced. Mr. Lape asserted that the written fee agreement ("the agreement") between him and the defendants included a provision whereby the parties agreed to submit any fee disputes to arbitration with the Louisiana State Bar Association. Mr. Lape sought a judgment ordering the defendants to "participate in binding arbitration—either with the Louisiana State Bar Association or with another arbitrator to be named by the Court."[2] In his answer and reconventional demand, Mr. Brown alleged, among other things, that Mr. Lape's "right to arbitration has prescribed and/or that the arbitration provision is unenforceable."[3]

Following a hearing on October 27, 2020, the district court signed a judgment on November 13, 2020, ordering Mr. Brown to participate in arbitration.

---

[2] The hearing on Mr. Lape's petition was originally scheduled for September 22, 2020. Because Mr. Brown was not served until September 18, 2020, the hearing as it related to Mr. Brown was continued and rescheduled for October 27, 2020. However, the September 22, 2020 hearing was held with regard to Mr. Costanza. Thereafter, Mr. Costanza was ordered to comply with arbitration in a separate judgment signed on October 15, 2020. The judgment related to Mr. Costanza is not at issue in this appeal.

[3] We note that Mr. Brown also asserted a claim for damages sounding in legal malpractice.

2

This appeal by Mr. Brown followed. After the appeal record was lodged, this court issued a Rule to Show Cause Order, noting that it appeared the November 13, 2020 judgment was not a final, appealable ruling. On July 6, 2021, the Rule to Show Cause was referred to the merits panel.

In response to the show cause order, Mr. Brown filed a brief arguing that the November 13, 2020 judgment is a final judgment in that it determined the merits of the main demand in favor of Mr. Lape. Mr. Brown avers that the sole issue to be decided in the main demand was whether the defendants would be compelled to participate in arbitration. Further, Mr. Brown asserts the judgment contains the requisite decretal language insofar as it names the party in favor of whom the ruling was ordered (Mr. Lape), the party against whom the ruling was ordered (Mr. Brown), and the relief that was granted or denied (order requiring Mr. Brown to participate in arbitration). Because the judgment grants the only relief Mr. Lape sought in his petition, Mr. Brown maintains that the judgment is a final judgment.

In **Collins v. Prudential Ins. Co. of America**, 99-1423 (La. 1/19/00), 752 So.2d 825, the Louisiana Supreme Court explained the review of judgments as they pertain to arbitration orders:

> Most courts addressing arguments about whether a judgment concerning arbitration is final or interlocutory distinguish between cases where the only issue before the court is a request to determine the availability of arbitration and cases where the court is asked to resolve other issues, such as the merits of the controversy. The first category of cases are often termed "independent proceedings" and judgments in such proceedings are considered final and appealable because nothing else is before the court. The second category of cases are termed "embedded proceedings" in which a party has asked for relief beyond an order compelling or prohibiting arbitration. Orders compelling arbitration in embedded proceedings are considered interlocutory and are not immediately appealable.

**Collins**, 752 So.2d at 829 n.8 (citations omitted). **Collins** involved a suit for libel, defamation, and intentional infliction of emotional distress. The defendants filed a joint motion to compel arbitration. After the district court ordered arbitration, the

3

Louisiana Supreme Court found that the ruling did not invoke the fourth circuit's appellate jurisdiction because it "did not dispose of the merits of the case in whole or in part." *Id.* at 829. Cf. **Cajun Elec. Power Co-op., Inc. v. Louisiana Power & Light Co.**, 334 So.2d 554, 555 (La. App. 4 Cir. 1976) ("When the trial judge ordered arbitration, he passed on the merits of the case. Therefore, the trial court judgment is a final judgment.").

We note that the only remedy sought by Mr. Lape in his petition was a judgment ordering the parties to submit to binding arbitration. The November 13, 2020 judgment granted Mr. Lape's petition to compel arbitration and ordered Mr. Brown to "participate in, and comply with" arbitration as requested by Mr. Lape's petition. There are no other pending issues before the district court. The district court determined the whole of the merits of Mr. Lape's main demand. There is nothing left for the district court to decide as to the main demand. Thus, we conclude the November 13, 2020 judgment is a partial final judgment pursuant to La. Code Civ. P. art. 1915(A)(4), and we maintain the appeal.

## DISCUSSION

On appeal, Mr. Brown argues that the district court erred in ordering him to comply with binding arbitration as Mr. Lape had failed to meet the requirements set forth by the Louisiana Supreme Court for disclosures of the consequences of arbitration. Thus, Mr. Brown maintains, the arbitration provision in this case was unenforceable, and the district court's judgment must be reversed. We agree.

The attorney-client relationship is one of special confidence and trust, and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. **Succession of Wallace**, 574 So.2d 348, 352 (La. 1991). Without public confidence in the members of the legal profession, which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. *Id.* Louisiana law

4

recognizes that an attorney's paramount duty is, and must be, to his client. **Penalber v. Blount**, 550 So.2d 577, 581 (La. 1989). In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. **Scheffler v. Adams and Reese, LLP**, 2006-1774 (La. 2/22/07), 950 So.2d 641, 651; **Lupo v. Lupo**, 475 So.2d 402, 405 (La. App. 1 Cir. 1985).

> The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor.

**Scheffler**, 950 So.2d at 651 (quoting **Searcy v. Novo**, 188 So. 490, 498 (La. App. 2 Cir. 1939)).

As set forth in Louisiana Rule of Professional Conduct 1.0(e), "informed consent" is defined as consent given after an attorney "has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." In the context of attorney-client arbitration clauses, this means the attorney has an obligation to fully explain to the client the possible consequences of entering into an arbitration clause, including the legal rights the client gives up by agreeing to binding arbitration. Without clear and explicit disclosure of the consequences of a binding arbitration clause, the client's consent is not truly "informed." **Hodges v. Reasonover**, 2012-0043 (La. 7/2/12), 103 So.3d 1069, 1077. Accord, ABA Formal Ethics Opinion 02-425 (The client must be "fully apprised of the advantages and disadvantages of arbitration" and "given sufficient information to permit [him] to make an informed decision about whether to agree to the inclusion of the arbitration provision.")

The Louisiana Supreme Court held in **Hodges** that "arbitration clauses in attorney-client agreements may be enforceable, provided the contract does not limit the attorney's substantive liability, is fair and reasonable to the client, and

5

does not impose any undue procedural barrier to a client seeking relief." **Hodges**, 103 So.3d at 1078. The court further noted:

> [W]e hold there is no *per se* rule against arbitration clauses in attorney-client retainer agreements, provided the clause is fair and reasonable to the client. However, the attorneys' fiduciary obligation to the client encompasses ethical duties of loyalty and candor, which in turn require attorneys to fully disclose the scope and the terms of the arbitration clause. An attorney must clearly explain the precise types of disputes the arbitration clause is meant to cover and must set forth, in plain language, those legal rights the parties will give up by agreeing to arbitration.

*Id.* at 1071. Thus, the **Hodges** court concluded, an attorney may not take any action that might adversely affect a client's interest without the client's informed consent. *Id.* at 1077. A client's consent is "not truly 'informed'" unless an attorney provides a "clear and explicit disclosure of the consequences of a binding arbitration clause." *Id.*

The **Hodges** court further reasoned that since clients may not understand the arbitration process and the full implications of an arbitration clause, the attorney must, at a minimum, disclose the following legal effects of binding arbitration, assuming they are applicable: (1) the waiver of the right to a jury trial, (2) the waiver of the right to an appeal, (3) the waiver of the right to broad discovery, (4) the potentially higher upfront costs of arbitration as compared to litigation, (5) the exact claims covered by the arbitration clause, (6) the fact that an arbitration clause does not preclude a client from making a disciplinary complaint, and (7) the fact that a client may consult independent counsel before agreeing to the clause. *Id.*

In this case, the agreement entered into by Mr. Lape and Mr. Brown contained the following provision:

> 5. ALTERNATIVE DISPUTE RESOLUTION. In the event of any dispute or disagreement concerning this agreement, We agree to submit to arbitration by the Louisiana State Bar Association Legal Fee Dispute Resolution Program.
>
> NOTICE: By initialing in the space below, you are agreeing to have any dispute arising out of the matters included in the

6

"Alternative Dispute Resolution" provision decided by neutral binding arbitration as provided by Louisiana Arbitration Law; and you are giving up your right to have the dispute decided in a court or jury trial. By initialing in the space below, you are also giving up your rights to discovery and appeal. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the Louisiana Arbitration Law.

At the October 27, 2020 hearing, Mr. Brown testified that he met with Mr. Lape prior to signing the agreement, but Mr. Lape did not explain the arbitration provision to him. Mr. Brown further acknowledged that he did not recall reading the agreement prior to signing and initialing the agreement.

Mr. Lape was questioned at the hearing about his representation of Mr. Brown. Mr. Lape indicated that Mr. Brown and Mr. Costanza contacted him about an ongoing dispute they had with a condominium association. Mr. Lape explained that he and Mr. Costanza were both members of a barter trade organization called Crescent City Trade Exchange and that Mr. Brown and Mr. Costanza wanted Mr. Lape to accept all of his fees through the barter system. He advised them that while he could not "float all of [his] hourly rate," he could do a portion through the Crescent City Trade Exchange, and the rest would be handled through a fee agreement. Mr. Lape prepared the agreement and emailed it to both parties on September 10, 2018. Mr. Lape's email stated simply, "Here is a proposed fee agreement. Please return a signed copy or let me know if you have any questions." Shortly after sending the email, Mr. Lape received a reply email with a scanned copy of the agreement containing the initials and signatures of both Mr. Brown and Mr. Costanza. Mr. Lape immediately began working on the case for his clients.

When asked specifically about the agreement, the following colloquy occurred between Mr. Lape and counsel for Mr. Brown:

[Mr. Lape]: ... I don't recall discussing paragraph five, the alternative dispute resolution paragraph, with either of them at all, ever. If that gives you what you want.

7

[Counsel]: Sure. So you never discussed with them the waiver of a right to a jury trial?

[Mr. Lape]: That's correct.

[Counsel]: And you never discussed with them the waiver of their right to an appeal?

[Mr. Lape]: Again, those are all provisions in paragraph five. I did not discuss anything about paragraph five with them ever at any time. The only thing I did was e-mail it to them and say let me know if you have any questions.

[Counsel]: So any of the disclosures that are necessary or required by the Louisiana Supreme Court, you did not do; is that correct?

[Mr. Lape]: No. I mean, I'm not prepared to agree with that at all.

[Counsel]: Okay. Well, we'll go back to them then. The waiver of a right to a jury trial, did you discuss it with them?

[Mr. Lape]: I offered to discuss it with them. They declined to do so.

[Counsel]: When did you offer to discuss it with them, sir?

[Mr. Lape]: Looking at what's been identified as Plaintiff's Exhibit P-1, I said, Please let me know if you have any questions.

[Counsel]: Okay. What about the waiver of a right to an appeal? Did you discuss this with Mr. Costanza or Mr. Brown?

[Mr. Lape]: No.

[Counsel]: The waiver to the right to broad discovery under Louisiana Code of Civil Procedure, did you discuss that with Mr. Brown or Mr. Costanza?

[Mr. Lape]: No, ma'am. With all of those factors, I only offered to discuss it with them as memorialized in my September 10, 2018 e-mail, Let me know if you have any questions.

[Counsel]: Okay. But your -- I'm sorry. Go ahead.

[Mr. Lape]: I don't have anything else to offer.

[Counsel]: But under paragraph five of the fee agreement which is the alternative dispute resolution, it does not say anything about the client's right to make a disciplinary complaint, does it?

[Mr. Lape]: No.

[Counsel]: Paragraph five under the fee agreement alternative dispute resolution does not offer the client an opportunity to speak with an independent counsel before signing this, does it?

[Mr. Lape]: Oh, they absolutely had the opportunity to seek independent counsel as memorialized in Plaintiff's Exhibit P-1. I didn't give them a deadline to respond. I wasn't forcing them to sign with me.
They were the ones with the rush impetus. I simply responded to their urgency.

. . . .

[Counsel]: The question was, Does this paragraph tell the client that they have a right to speak with independent counsel before signing this contract?

[Mr. Lape]: I do not see that language within paragraph five.

At the close of the hearing, the district court ruled that the arbitration provision of the agreement could be enforced, noting that "[e]specially just for judicial consistency," as Mr. Costanza had been ordered to go to arbitration, now Mr. Brown would also be ordered to do the same. The district court stated further that "our signatures to contracts are not mere ornamentation, but a testament to the fact that we have read and understood everything contained therein."

Based on our review of the record and the applicable jurisprudence, we find the district court erred in ordering Mr. Brown to participate in arbitration. While we acknowledge that Mr. Brown did in fact sign the agreement containing the arbitration provision, we cannot ignore the requirements set forth by the Louisiana Supreme Court in **Hodges** or the fact that Mr. Lape failed to explain to Mr. Brown the consequences of entering into the agreement. "Without clear and explicit disclosure of the consequences of a binding arbitration clause, the client's consent is not truly 'informed.'" **Hodges**, 103 So.3d at 1077. Although the agreement mentioned the waiver of the right to a jury trial, discovery, and appeal, there was no real discussion of these rights between Mr. Lape and Mr. Brown. Furthermore, the agreement is void of any mention of the potentially higher upfront costs of

9

arbitration as compared to litigation, the exact claims covered by the arbitration clause, the fact that an arbitration clause does not preclude a client from making a disciplinary complaint, and the fact that a client may consult independent counsel before agreeing to the clause, all of which, if applicable, were required to be disclosed by Mr. Lape to Mr. Brown. See *Id.*

## DECREE

For the above and foregoing reasons, we maintain the appeal and reverse the district court's November 13, 2020 judgment. We assess all costs associated with this appeal against appellee, Willard O. Lape, III.

**APPEAL MAINTAINED; REVERSED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0391

WILLARD O. LAPE, III

VERSUS

THOMAS ADAIR BROWN AND THOMAS COSTANZA

**WOLFE, J., CONCURS AND ASSIGNS ADDITIONAL REASONS.**

Although I would prefer to find that the arbitration clause at issue in this case is reasonably clear and that the parties should abide by the agreed upon arbitration for any potential fee disputes, I will respectfully concur in the result reached by the majority. I assign these additional reasons to point out that this court is constrained to follow a controlling First Circuit case, **Carleton Loraso & Hebert, LLC v. Owens**, 2016-0684 (La. App. 1st Cir. 12/22/16), 2016 WL 7407402 (unpublished). In **Carleton**, the same arbitration clause in an attorney-client contract was found to be unenforceable when the law firm attempted to force its client to arbitrate a fee dispute. This court found that the arbitration clause did not explicitly disclose the nature of the claims that were subject to arbitration. Further, this court determined that the arbitration clause was ambiguous and internally conflicting since it explicitly referenced claims for arbitration to be heard by the Louisiana State Bar Association Legal *Fee Dispute* Resolution Program while at the same time, it required that the parties agree to have *any dispute* decided by arbitration. **Carleton**, 2016 WL 7407402 at *3. Louisiana law clearly favors arbitration; however, in this situation, our court must abide by indistinguishable case law. For this reason, I respectfully concur.