# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2024

Lyle W. Cayce
Clerk

No. 23-30246

Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; HDI Global Specialty SE; Old Republic Union Insurance Company; GeoVera Specialty Insurance Company; Transverse Specialty Insurance Company; Certain Underwriters at Lloyd's London, severally subscribing to certificate no. AMR-73525,

*Plaintiffs—Appellees*,

*versus*

Belmont Commons, L.L.C., doing business as 925 Common; Belmont Delaware, L.L.C.,

*Defendants—Appellants.*

---

Belmont Commons, L.L.C., doing business as 925 Common; Belmont Delaware, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Old Republic Union Insurance Company;

No. 23-30246

GEOVERA SPECIALTY INSURANCE COMPANY; TRANSVERSE SPECIALTY INSURANCE COMPANY,

*Defendants—Appellees*,

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:22-CV-3874, 2:22-CV-3876

_____

Before RICHMAN, *Chief Judge*, STEWART, *Circuit Judge*, and HANKS, *District Judge*.[*]

PER CURIAM:[**]

In this first-party insurance case, the policyholders seek a partial reversal of the district court's order compelling them to arbitrate their claims. We AFFIRM.

## PROCEDURAL BACKGROUND

Belmont Commons L.L.C. and Belmont Delaware L.L.C. (collectively "Belmont") own a property ("the property") that is located near the French Quarter in New Orleans, Louisiana and consists of luxury apartments, retail space, and parking. To insure the property against damage caused by named windstorms, Belmont obtained a surplus lines insurance policy[1] ("the

---

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[**] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] As the Louisiana Department of Insurance has put it, "[s]urplus lines insurance is an alternative type of property and casualty insurance coverage for consumers who cannot get coverage in the standard market. Standard insurance companies may choose not to write policies for specialty risk or high-risk situations such as extremely old homes

No. 23-30246

Policy") that allocated named windstorm coverage among eleven separate insurance companies ("the Insurers"). Nine of those insurance companies— Indian Harbor Insurance Company, QBE Specialty Insurance, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company—are domiciled in the United States ("the domestic Insurers"), while the remaining two— Certain Underwriters at Lloyd's, London severally subscribing to Certificate No. AMR-73525 and HDI Global Specialty SE—are domiciled in, respectively, Great Britain and Germany ("the foreign Insurers").

> The Policy included an arbitration clause that read, in relevant part:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

> . . .

> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

> The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

---

located in coastal areas, expensive boats and cars, day-care centers' liability needs, or medical malpractice needs, which may be insured by surplus lines companies." *Accessed at* https://ldi.la.gov/docs/defaultsource/documents/publicaffairs/consumerpublications /surplus-lines.pdf?sfvrsn=418e7c52_15.

The Policy also included allocation language providing that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters."

On August 29, 2021, Hurricane Ida struck New Orleans, damaging the property. Belmont made a claim on the Policy, and a third-party claim administrator, Sedgwick Delegated Authority ("Sedgwick"), handled the claim for the Insurers. After concluding its investigation, Sedgwick sent Belmont a letter on the Insurers' behalf denying Belmont's claim on the basis that the storm damage to the property fell below the Policy's $1,464,000.00 named windstorm deductible.

Belmont then sued the domestic Insurers (but not the foreign Insurers) in Louisiana state court for breach of contract, bad faith, and unfair claims handling practices. On the day that it filed its Louisiana action against the domestic Insurers, Belmont also served a demand for arbitration under the Policy on all of the Insurers, both foreign and domestic; in its arbitration demand, Belmont purported to "reserve[] for juridical adjudication all claims it may have for bad faith."

In response, the Insurers, both foreign and domestic, served their own demand for arbitration under the Policy on Belmont and filed a complaint to compel arbitration in the Eastern District of Louisiana. The domestic Insurers then removed Belmont's lawsuit against them to the Eastern District of Louisiana, where the two actions were ultimately consolidated.

Once the cases were in one place, the Insurers moved to compel arbitration under the Policy's arbitration provisions and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). The district court granted the Insurers' motion and denied two motions for reconsideration filed by Belmont. However, in its order denying Belmont's second motion for reconsideration, the district court, at

Belmont's request, certified its order compelling arbitration as appealable under 28 U.S.C. §1292(b). Another panel of this Court granted Belmont's motion for leave to appeal from the district court's order.

## THE DISTRICT COURT'S ANALYSIS AND BELMONT'S CONTENTIONS

In compelling arbitration, the district court applied the doctrine of equitable estoppel as articulated by this Court in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000), observing that "*Grigson* estoppel has been consistently applied by Louisiana courts." In *Grigson*, this Court, adopting a test outlined by the Eleventh Circuit, wrote that "equitable estoppel allows a nonsignatory to compel arbitration . . . when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (ellipsis added; emphasis removed). The district court also cited the Convention, which requires district courts to order arbitration if: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002). With *Grigson* and the Convention providing its guiding principles, the district court's reasoning proceeded in three steps: (1) the Convention requires Belmont to arbitrate its disputes with the foreign Insurers; (2) Belmont's pleadings allege "identical, interrelated misconduct" by all of the Insurers in the handling of Belmont's Hurricane Ida claim; and, accordingly, (3) *Grigson* estoppel allows the domestic Insurers to compel Belmont to arbitrate its claims against them as well.

No. 23-30246

On appeal, Belmont contends that the district court's analysis was erroneous at steps two and three. With regard to step two, Belmont asserts that its pleadings do not allege interdependent and concerted conduct. As to step three, Belmont asserts that Louisiana statutory law invalidates arbitration clauses contained in insurance contracts that are issued by domestic insurers and that insure property located in Louisiana. Belmont acknowledges that, as the district court pointed out, the Louisiana statute that bars arbitration clauses in insurance contracts issued by domestic insurers contains a carve-out for surplus lines insurers. However, Belmont contends that the district court misgauged the reach of the carve-out.

## LEGAL STANDARD

We review the district court's determination of a motion to compel arbitration de novo and review any factual findings underlying that determination for clear error. *Forby v. One Technologies, L.P.*, 909 F.3d 780, 783 (5th Cir. 2018).

## ANALYSIS

Although the district court correctly analyzed and applied the *Grigson* estoppel doctrine, we see no need to invoke *Grigson*. As we mentioned above, subsumed within the district court's *Grigson* analysis was an interpretation of the carve-out provision in Louisiana's statutory bar on arbitration clauses in insurance contracts. We agree with the district court's interpretation of the carve-out provision; and a straightforward application of that provision allows all of the Insurers, both foreign and domestic, to enforce the Policy's arbitration clause.

La. R.S. § 22:868(A) provides:

No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or

any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:

(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.

(2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.

Lᴀ. R.S. § 22:868(A).

"Although it is not clear from this provision's text that arbitration agreements are voided, Louisiana courts have held that such agreements are unenforceable because of this statute." *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 719 (5th Cir. 2009) (en banc). However, as the district court noted, Lᴀ. R.S. § 22:868(D) creates a carve-out from the statute. Subsection (D) reads:

The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

Lᴀ. R.S. § 22:868(D).

Surplus lines insurers' forms for property insurance are not subject to approval by the Louisiana Department of Insurance. Lᴀ. R.S. § 22:446(A). Since surplus lines insurers are covered by Lᴀ. R.S. § 22:868(D), the district court reasoned that the prohibition on arbitration clauses contained in Lᴀ. R.S. § 22:868(A) does not apply to the Policy.

We agree with the district court. The determinative issue regarding the scope of the carve-out is whether an arbitration clause is considered a

7

"forum or venue selection clause" under LA. R.S. § 22:868(D). The Louisiana Supreme Court has not addressed the question, and it recently declined to answer a question certified to it by the Eastern District of Louisiana that would have resolved the matter. *See Southland Circle, LLC v. Independent Specialty Insurance Co.*, 370 So. 3d 1047 (La. 2023).

In the absence of a final decision by the Louisiana Supreme Court, "we make an *Erie* guess, which requires us to employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019) (quotation marks omitted). Under Louisiana law, "[t]he starting point for interpretation of any statute is the language of the statute itself." *Pierce Foundations, Inc. v. Jaroy Construction, Inc.*, 190 So. 3d 298, 303 (La. 2016). "The words of a law must be given their generally prevailing meaning." LA. CIV. CODE art. 11. "Words of art and technical terms must be given their technical meaning when the law involves a technical matter." *Id.* "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LA. CIV. CODE art. 9.

The Louisiana Supreme Court, citing its own decision in *Hodges v. Reasonover*, recently characterized arbitration clauses as "a type of venue selection clause." *Donelon v. Shilling*, 340 So. 3d 786, 790 n.6 (La. 2020) (citing *Hodges v. Reasonover*, 103 So. 3d 1069, 1076 (La. 2012)). *Hodges* in turn cited and quoted *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, in which this Court described an arbitration clause as "a type of forum-selection clause." *Hodges*, 103 So. 3d at 1076; *see also Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 443 (5th Cir. 2008).

No. 23-30246

Given that the Louisiana Supreme Court has characterized arbitration clauses as a type of venue selection clause, we conclude that the carve-out contained in LA. R.S. § 22:868(D) unambiguously includes arbitration clauses. Moreover, including arbitration clauses in the carve-out does not lead to absurd consequences; LA. R.S. § 22:868(D) provides a measure of flexibility to surplus lines insurers—who by definition are willing to insure risks and provide coverage for consumers who cannot get coverage in the standard market—by exempting them from the strictures of LA. R.S. § 22:868(A). Since the Insurers are all surplus lines insurers and the Policy is a surplus lines policy, all of the Insurers may enforce the Policy's arbitration clause, LA. R.S. § 22:868(A) notwithstanding.

## CONCLUSION

We AFFIRM the district court's order compelling arbitration.